# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

Civil Action No.    1:25-CV-00317-RTG

(To be supplied by the court)

GREG E. LINDBERG
, Plaintiff

v.

HUGH STEVEN WILSON
,

**FILED**
**UNITED STATES DISTRICT COURT**
**DENVER, COLORADO**
*11:19 am, Mar 03, 2025*
**JEFFREY P. COLWELL, CLERK**

,

,

, Defendant(s).

*(List each named defendant on a separate line.  If you cannot fit the names of all defendants in the space provided, please write "see attached" in the space above and attach an additional sheet of paper with the full list of names.  The names of the defendants listed in the above caption must be identical to those contained in Section B.  Do not include addresses here.)*

---

## COMPLAINT

---

| NOTICE |
|---|
| Federal Rule of Civil Procedure 5.2 addresses the privacy and security concerns resulting from public access to electronic court files.  Under this rule, papers filed with the court should not contain: an individual's full social security number or full birth date; the full name of a person known to be a minor; or a complete financial account number.  A filing may include only: the last four digits of a social security number; the year of an individual's birth; a minor's initials; and the last four digits of a financial account number. |
| **Plaintiff need not send exhibits, affidavits, grievances, witness statements, or any other materials to the Clerk's Office with this complaint.** |

## A.    PLAINTIFF INFORMATION

*You must notify the court of any changes to your address where case-related papers may be served by filing a notice of change of address.  Failure to keep a current address on file with the court may result in dismissal of your case.*

GREG E. LINDBERG, P.O. BOX 159, THONOTOSASSA, FL. 33592

(Name and complete mailing address)

919-308-9686 gel@greglindberg.com

(Telephone number and e-mail address)

## B.    DEFENDANT(S) INFORMATION

*Please list the following information for each defendant listed in the caption of the complaint.  If more space is needed, use extra paper to provide the information  requested.  The additional pages regarding defendants should be labeled "B.  DEFENDANT(S) INFORMATION."*

Defendant 1:    HUGH STEVEN WILSON, 575 CIRCLE DRIVE, DENVER, CO. 80206

(Name and complete mailing address)

Steve@hswilson.com

(Telephone number and e-mail address if known)

Defendant 2:

(Name and complete mailing address)

(Telephone number and e-mail address if known)

Defendant 3:

(Name and complete mailing address)

(Telephone number and e-mail address if known)

Defendant 4:

(Name and complete mailing address)

(Telephone number and e-mail address if known)

## C.    JURISDICTION

*Identify the statutory authority that allows the court to consider your claim(s): (check one)*

☐    Federal question pursuant to 28 U.S.C. § 1331 (claims arising under the Constitution, laws, or treaties of the United States)

List the specific federal statute, treaty, and/or provision(s) of the United States Constitution that are at issue in this case.

_____

_____

☒    Diversity of citizenship pursuant to 28 U.S.C. § 1332 (a matter between individual or corporate citizens of different states and the amount in controversy exceeds $75,000)

Plaintiff is a citizen of the State of __Florida_____.

If Defendant 1 is an individual, Defendant 1 is a citizen of __Colorado_____.

If Defendant 1 is a corporation,

Defendant 1 is incorporated under the laws of _____ (name of state or foreign nation).

Defendant 1 has its principal place of business in _____ (name of state or foreign nation).

*(If more than one defendant is named in the complaint, attach an additional page providing the same information for each additional defendant.)*

3

**D.    STATEMENT OF CLAIM(S)**

*State clearly and concisely every claim that you are asserting in this action.  For each claim, specify the  right that allegedly has been violated and state all facts that support your claim, including the date(s) on which the incident(s) occurred, the name(s) of the specific person(s) involved in each claim, and the specific facts that show how each person was involved in each claim.  You do not need to cite specific legal cases to support your claim(s).  If additional space is  needed to describe any claim or to assert additional claims, use extra paper to continue that claim or to assert the additional claim(s).  Please indicate that additional paper is attached and label the additional pages regarding the statement of claims as "D. STATEMENT OF CLAIMS."*

CLAIM ONE: Removal of Trustee Pursuant to C.R.S. § 15-5-706: Fleet

Supporting facts: Additional Paper is attached

4

CLAIM TWO:     Removal of Trustee Pursuant to C.R.S. § 15-5-706: Clanwilliam Trust

Supporting facts: Additional Paper is attached

**Click to File Additional Claim - Page will appear at end of document**

**E.    REQUEST FOR RELIEF**

*State the relief you are requesting or what you want the court to do. If additional space is needed to identify the relief you are requesting, use extra paper to request relief. Please indicate that additional paper is attached and label the additional pages regarding relief as "E. REQUEST FOR RELIEF."*

Additional paper is attached

**F.    PLAINTIFF'S SIGNATURE**

I declare under penalty of perjury that I am the plaintiff in this action, that I have read this complaint, and that the information in this complaint is true and correct. *See* 28 U.S.C. § 1746; 18 U.S.C. § 1621.

Under Federal Rule of Civil Procedure 11, by signing below, I also certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending or modifying existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

Greg E. Lindberg
_____
(Plaintiff's signature)

02/21/2025
_____
(Date)

(Revised December 2017)

CLAIM 3 : <u>Removal of Trustee Pursuant to C.R.S. § 15-5-706: ECL Trust</u>

Supporting facts: Additional Paper is attached

CLAIM 4 : Breach of Fiduciary Duties Pursuant to § 15-5-802, et seq.: Fleet Trust

Supporting facts: Additional Paper is attached

CLAIM 5 : Breach of Fiduciary Duties Pursuant to § 15-5-802, et seq.: Clanwilliam Trust

Supporting facts: Additional Paper is attached

CLAIM 6 : Breach of Fiduciary Duties Pursuant to § 15-5-802, et seq.: ECL Trust

Supporting facts: Additional Paper is attached

CLAIM **7**    : Demand for Accounting

Supporting facts: Additional Paper is attached

CLAIM 8 : Emergency Preliminary Injunction Pursuant to F.R.C.P. 65(a)

Supporting facts: Additional Paper is attached

# D. STATEMENT OF CLAIMS

## FACTUAL ALLEGATIONS

### I.    **Background**

1.      Petitioner Greg Lindberg is the beneficial owner of significant interests in hundreds of companies throughout the world.

2.      The collective net worth of these entities is several billion dollars.

3.      Over time Lindberg established several trusts, to manage certain of these interests.

4.      These trusts include the Fleet Assist Group Trust ("Fleet AGT"), the Clanwilliam Group Trust, and the ECL Trust, collectively the "Trusts".

5.      Lindberg funded the trusts by transferring his (direct or indirect) interests in certain entities to each trust.

6.      Lindberg entrusted the management of these holdings to Respondent Hugh Steven Wilson, appointing Wilson to act as sole Trustee for each of them.

7.      For all entities relevant to this dispute, Lindberg was the sole beneficial holder of all the stock or membership rights in each entity.

8.      Accordingly, Lindberg conferred upon Wilson the exclusive right to manage and/or vote for the management of each entity.

9.      Simply put, Wilson was the sole person controlling hundreds of millions of dollars' worth of assets, earned and acquired by Lindberg, and placed into trusts for the benefit of his beneficiaries.

10.     Wilson was actively involved in managing the trusts and their assets on a daily basis—as his seven-figure fees demonstrate.

11.     However, Lindberg has learned that Wilson has acted at all times directly contrary to his role as fiduciary, championing his own interests and those of third parties over the designated beneficiaries.

12.     Wilson was bound to "take reasonable steps to take control of and protect the trust property." C.R.S. § 15-5-809.

13.     He did not.

14.     He was required to "exercise reasonable care, skill, and caution." C.R.S. § 15-5-804.

15.     He failed to do so.

16.     He agreed to "administer the trust as a prudent person would, by considering the purposes, terms, distribution requirements, and other circumstances of the trust." C.R.S. § 15-5-804.

17.     Instead, Wilson exceeded and abused his authority by a) refusing to provide financial records and accountings as required by the Trust Instruments and applicable law, b) actively working to devalue trust assets instead of working to preserve and/or increase trust assets for the interest of the beneficiaries, c) running an entire portfolio of health care businesses worth $100,000,000 into bankruptcy, d) filing for bankruptcy without authority, e) disposing of Trust assets without the consent of the Settlor in violation of the trust's explicit restrictions on the Trustee's powers and authority; f) refusing to advance payments required by the explicit language of the trust; g) jeopardizing trust assets by precluding income tax filings required by the United States government;  h) appointing directors willing to serve

the Trustee's interests instead of the interests of the trusts' beneficiaries and/or the entities they serve; i) colluding with third parties to sell assets for less than their value; and overall working to serve his own interests rather than his fiduciary duties.

## II.    Trusts Settled by Triton Financial Limited

18.    Greg Lindberg is the sole beneficial owner of Triton Financial Limited ("Triton").

19.    Before the formation of the trusts at issue, Triton was the sole owner of Clanwilliam Headquarters Limited and thereby, its subsidiaries, collectively referred to as the Clanwilliam Group.

20.    Triton was also the sole owner of Fleet Assist Interco Limited and thereby, its subsidiaries, collectively referred to as the Fleet Assist Group.

21.    On or about November 4, 2020, Lindberg caused Triton to establish the Clanwilliam Group Trust ("**Clanwilliam Trust**") to hold the Clanwilliam Group business interests for the benefit of his designated beneficiary, George A. Vandeman.

22.    On or about July 29, 2021, Lindberg caused Triton to establish the Fleet Assist Group Trust ("**Fleet AGT Trust**") to hold the Fleet Assist Group business interests for the benefit of his designated beneficiary, Robert Gaddy.

23.    Lindberg entrusted Respondent Hugh Steven Wilson to serve as Trustee for both the Clanwilliam Trust and the Fleet Trust.

24.    By appointing Wilson Trustee and contributing *all* the shares of the Clanwilliam Group and Fleet Assist Group, Lindberg relinquished all control over holdings worth hundreds of millions of dollars to one person—Hugh Steven Wilson.

25.    Wilson alone votes for all Clanwilliam Group and Fleet Assist Group's

directors and is thereby completely in control of the management of both the holding companies and all subsidiaries they hold.

### A.    Willful Violations of the Fleet AGT Trust Instrument

*1.    Accounting and Taxes: Wilson willfully refuses to comply with his obligation to account to the Settlor and advance both records and payment for taxes.*

26.    Trustees are required by law to "keep adequate records of the administration of the trust." C.R.S. § 15-5-810(1).

27.    Wilson has failed to provide any requested records to confirm his performance despite urgent requests for business records sent on numerous occasions.

28.    Similarly, Trustees must "keep the qualified beneficiaries of the trust reasonably informed about the administration of the trust and of the material facts necessary for them to protect their interests." C.R.S. § 15-5-813(1).

29.    Wilson has not done so.

30.    In fact, Wilson has completely ignored all requests for accounting in violation of his duties. C.R.S. § 15-5-813(1) ("Unless unreasonable under the circumstances, a trustee shall promptly respond to a qualified beneficiary's request for information related to the administration of the trust.").

31.    The Fleet AGT trust instrument requires that the Trustee (Wilson) work with the Settlor (Triton, via Lindberg) to file Fleet AGT's United States taxes:

The Trustees shall pay to the Settlor such amounts from the net income of the Trust as shall be necessary for the Settlor, or advised by the Settlor to pay any U.S. or non

U.S. federal, state and local income tax on the net income of the Trust that is required to be paid by the Settlor or its owners pursuant to Subpart E of the Code and the comparable provisions of any state or local income tax law or regulation.

32.    Failing to file and pay a trust's taxes jeopardizes all the assets of the trust, rendering them vulnerable to tax liens, litigation, and seizure.

33.    In direct conflict with his explicit duties, Wilson has steadfastly refused to provide any financial documents or information related to the trust since he was appointed.

34.    Examples of standard business records Lindberg has requested, and Wilson has refused to provide (for the Trusts or for any of the entities the Trusts hold) include:

a)    tax returns;
b)    general ledgers;
c)    bank statements;
d)    credit card statements;
e)    receipts;
f)    a list of checks drawn and bank reconciliation;
g)    payroll;
h)    payroll tax records;
i)    asset and depreciation schedules.

35.    On December 19, 2023, Lindberg delivered a letter to Wilson summarizing the missing documents in a table and emphasizing the potential civil and criminal penalties for all involved.

36.    Wilson ignored even this basic request.

37.    Wilson's wrongful withholding of all financial records for Fleet AGT has made it impossible for Lindberg to file Fleet AGT's taxes.

38.    Wilson manages    TFL's    holdings    for    the    benefit    of    the    trust

beneficiaries—he does not own the interests personally and has no right to withhold the related entities' financial information.

39.     Wilson continues to withhold all TFL's financial records from both the Settlor and the Beneficiary.

40.     Moreover, Wilson has clearly directed all TFL's directors, officers, employees, and agents from delivering any financial records to either the Settlor or the Trustee.

### B.     Wilson's Self-Dealing and Willful Devaluation of the Clanwilliam Trust's Assets

41.     The Clanwilliam Trust Instrument restricts the Trustee from making any Disposition of trust property without the written consent of the Settler. *See* Ex. A at p. 9 §5.2(a).

42.     Wilson is attempting to sell the Clanwilliam Group to TA Associates, LLP ("TAA") over the objection of Lindberg, who holds a veto right on the sale of any assets of the Trusts.

43.     Lindberg objects to the sale in large part because Clanwilliam Group is worth almost double what TAA is willing to pay for it.

a)      Clanwilliam Group is worth between five and eight hundred million dollars ($500,000,000-$800,000,000).

b)      TAA is only offering $450,000,000.

44.     In conflict with his duties to use best efforts to maintain or increase the value of trust assets, Wilson has actively campaigned to *decrease* the asking price for

Clanwilliam Group in favor of his chosen purchaser.

a)    **Winter 2024: Wilson drives away Quadro**: In January 2024, Quadro One Acquisition Corp., a special purchase acquisition company trading on NASDAQ as QDRO (hereinafter, "Quadro"), signed a purchase agreement offering to purchase the Clanwilliam Group for $800,000,000 as part of a purchase agreement with a larger group of companies related to Lindberg.

b)    As part of their due diligence, Quadro requested standard SEC filings.

c)    Wilson refused to provide them.

d)    Because Wilson failed to cooperate with Quadro's standard due diligence requests, Quadro withdrew from the transaction in March.

e)    **Spring 2024: Wilson drives away Apax**: A second buyer, Apax Partners ("Apax"), approached not long later, offering $500,000,000 to purchase the Clanwilliam Group.

f)    During Apax's due diligence; however, Wilson's elected director advanced false and misleading information targeted at convincing Apax to walk away from the deal.

g)    **Fall of 2024:** Wilson continues to drive away prospective purchasers: In November of 2024, Wilson was approached by two *additional* well-qualified buyers seeking to purchase Clanwilliam.

h)    One of the prospective purchasers frequently acquires companies

like Clanwilliam; it should have been a routine transaction.

i)      Wilson completely ignored their solicitations, refusing to provide them any information.

45.    Wilson's actions and omissions destroyed any chance of a competitive bidding process to secure market value for any potential sale of Clanwilliam.

46.    He calculatedly cleared the field for TAA to acquire Clanwilliam for far less than it is worth.

47.    TAA has been trying to acquire Clanwilliam since 2019, before Wilson was even appointed Trustee of Clanwilliam.

48.    Before Wilson was appointed Trustee, Clanwilliam would never have entertained one of TAA's low bid offers.

49.    Meanwhile, Wilson and his law firm Latham & Watkins stand on both sides of the contemplated TAA transaction.

a)      TAA is represented by Nicholas Cline of Latham & Watkins.

b)      Wilson is a retired partner, but on information and belief still accepts distributions of fees, at Latham & Watkins.

c)      Nicholas Cline called Lindberg in 2023 and demanded that Lindberg agree to sell Clanwilliam to TAA.

d)      Nicholas Cline was Lindberg's counsel and drafted the Clanwilliam Trust Instrument.

e)      Nicholas Cline did not secure Lindberg's waiver of any conflict of interest as his former client, serving an opposing client, in a transaction Lindberg is

clearly opposed to.

50.     Wilson is attempting to stack Triton's board to secure a vote to sell the Clanwilliam Group to TAA for hundreds of millions less than its true value.

51.     In so doing, Wilson will secure to his law firm substantial legal fees (which, on information and belief, he shares in directly or indirectly) while simultaneously charging his own substantial Trustee fees, collecting fees on both sides of a deal that robs the Beneficiary of tens, if not hundreds, of millions of dollars.

## III.    **Willful Violations of the ECL Trust**

52.     Lindberg is the sole ultimate owner of GHTG Investment, LLC ("GHTG").

53.     On or about July 22, 2021, Lindberg caused GHTG to create the ECL Trust.

54.     Lindberg appointed Wilson as Trustee for the ECL Trust.

55.     Wilson accepted the position as Trustee, agreeing to act for the sole benefit of its Beneficiary.

56.     Lindberg caused GHTG to fund the ECL Trust with a portfolio of eye care companies.

57.     In 2021, the portfolio was valued at one hundred and ninety-five million dollars ($195,000,000) and was generating over ten million dollars in Earnings Before Taxes, Depreciation, and Amortization ("EBITDA") per year.

58.     The duty Wilson accepted was to "manage, invest and reinvest the trust assets" to maximize benefits for the trust's beneficiary.

59.     The ECL Trust Instrument expressly prohibited Wilson from selling any

assets of the trust without GHTG (through Lindberg)'s written consent. *See* Ex. _B_ , p. 15 Art. V § C .

60.   As with the Fleet Trust, Wilson received absolute control to manage the entire portfolio, including voting for all directors.

61.   Under Wilson's management as trustee the businesses have seemingly collapsed.

62.   Wilson oversaw the hiring personnel who were incompetent and/or unqualified.

63.   His chosen officers and employees mismanaged operations resulting in unnecessary cost overlays and creating outrageous expenses.

64.   By way of example, the business had been performing well with $100,000 per month allocated to internet site hosting.

65.   Wilson's agents went on a spending spree, signing contracts for ten times that sum—clearly a bad wager when the business (according to Wilson) went from profitable to bankrupt almost immediately.

66.   After running the businesses into the ground, Wilson filed bankruptcy for the entire portfolio in February of 2024.

67.   This was a direct violation of the Trust's prohibition on any disposition of property,

68.   By filing for bankruptcy, Wilson assumed unto himself powers to sell the portfolio's assets, even though doing so was explicitly prohibited by the terms of the Trust Instrument through which he derives his only authority.

69.    Wilson's bankruptcy filing failed to report one hundred and seventy-five million dollars ($175,000,000) in debt, who stood senior to the creditors Wilson chose to include.

70.    Wilson promptly began selling off the bankruptcy portfolio without even consulting with the Settlor as the ECL Trust Instrument requires.

71.    Without authority and in gross violation of his duties, Wilson sold off the one hundred and ninety-five million dollar ($195,000,000) portfolio for only eight million dollars ($8,000,000).

72.    It is unclear whose interests Wilson is serving, but it is not those of his beneficiaries.

73.    Accordingly, he should no longer be acting as their trustee.

## FIRST CLAIM FOR RELIEF
### (Removal of Trustee Pursuant to C.R.S. § 15-5-706: Fleet)

74.    Petitioner incorporates and realleges the previous paragraphs as if fully set forth herein.

75.    Trustee has committed a serious breach of trust.

76.    Trustee has been unfit, unwilling, and/or has persistently failed to administer the trusts effectively.

77.    Failing to pay required distributions jeopardizes all the assets of the trust, rendering them vulnerable to liens, litigation, and seizure.

78.    Removal of the Trustee for all trusts related to Greg Lindberg best serves the interests of the beneficiaries.

79.    Removal of the Trustee for all trusts related to Greg Lindberg is

requested by all of the qualified beneficiaries.

80.    Removal of the Trustee for all trusts related to Greg Lindberg is consistent with the material purposes of the Trust.

81.    A suitable successor trustee is available.

82.    Pending final decision, Petitioner requests that the Court grant the relief requested within.

## SECOND CLAIM FOR RELIEF
### (Removal of Trustee Pursuant to C.R.S. § 15-5-706: Clanwilliam Trust)

83.    Petitioner incorporates and realleges the previous paragraphs as if fully set forth herein.

84.    Trustee has committed a serious breach of trust.

85.    The trustee has been unfit, unwilling, and/or has persistently failed to administer the trusts effectively.

a)    The Trustee has appointed management in an attempt to undermine the interests of the Beneficiary.

b)    The Trustee has engaged in self-dealing.

c)    The Trustee has a conflict of interest.

d)    The Trustee has squandered corporate opportunities held by the assets he controls.

86.    Removal of the Trustee for all trusts related to Greg Lindberg best serves the interests of the beneficiary.

87.    Removal of the Trustee for all trusts related to Greg Lindberg is requested by the only beneficiary.

88.    Removal of the Trustee for all trusts related to Greg Lindberg is consistent with the

material purposes of the Trust.

89.    A suitable successor trustee is available.

90.    Pending final decision, Petitioner requests that the Court grant the relief requested within.

## THIRD CLAIM FOR RELIEF
### (Removal of Trustee Pursuant to C.R.S. § 15-5-706: ECL Trust)

91.    Petitioner incorporates and realleges the previous paragraphs as if fully set forth herein.

92.    Trustee has committed a serious breach of trust.

93.    Trustee has been unfit, unwilling, and/or has persistently failed to administer the trusts effectively.

a)    The Trustee ran a revenue producing portfolio valued at $100,000,000 into bankruptcy.

b)    The Trustee is selling off trust assets for a fraction of their actual value.

c)    The Trustee is authorizing dispositions he does not have the power to make.

94.    Removal of the Trustee for all trusts related to Greg Lindberg best serves the interests of the beneficiaries.

95.    Removal of the Trustee for all trusts related to Greg Lindberg is requested by all the qualified beneficiaries.

96.    Removal of the Trustee for all trusts related to Greg Lindberg is consistent with the material purposes of the Trust.

97.    A suitable successor trustee is available.

98.    Pending final decision, Petitioner requests that the Court grant the relief requested within.

## FOURTH CLAIM FOR RELIEF
**(Breach of Fiduciary Duties Pursuant to § 15-5-802, *et seq.*: Fleet Trust)**

99.    Petitioner incorporates and realleges the previous paragraphs as if fully set forth herein.

100.    The Trustee has failed to administer the trust solely in the interest of its Beneficiary.

101.    When exercising his right to vote the Trustee did not act in the best interests of the Beneficiary.

102.    The Trustee elected or appointed directors and other managers who did not manage the corporation or enterprise in the best interests of the Beneficiary.

103.    The Trustee otherwise exercised his powers of control over the entities in a manner inconsistent with the best interests of the Beneficiary.

104.    The Trustee failed to administer the trust as a prudent person would, by considering the purposes, terms, distribution requirements, and other circumstances of the trust.

a)    A prudent person would ensure that sufficient information was supplied for the filing of tax returns.

b)    A prudent person would cooperate with the Settlor by providing records as needed to file Fleet AGT's tax return.

105.    The Trustee failed to exercise reasonable care, skill, and caution.

a)    The Trustee should have supplied information required for filing of tax returns for each entity held by the Trusts.

b)    The Trustee should have cooperated with Settlor by providing records as needed to file Fleet AGT's tax return.

106.    The Trustee incurred costs that were not appropriate and reasonable in relation to the trust property.

107.    The Trustee incurred costs that were not appropriate and reasonable in relation to the purposes of the trust.

108.    The Trustee incurred costs that were not appropriate and reasonable in relation to the skills of the trustee.

109.    The Trustee has or had special skills and expertise that should have been applied for the interests of the beneficiary but were instead applied in the interests of others and the Trustee himself.

110.    In exercising his right to delegate duties and powers, the Trustee failed to exercise reasonable care, skill, and caution in selecting said agents.

111.    In exercising his right to delegate duties and powers, the Trustee failed to exercise reasonable care, skill, and caution in establishing the scope and terms of said delegation to ensure they were exercised consistently with the purposes and terms of the trust.

112.    In exercising his right to delegate duties and powers, the Trustee failed to exercise reasonable care, skill, and caution when reviewing said agents' performance and compliance.

113.    The Trustee failed to take reasonable steps to take control of and protect the trust property.

114.    On information and belief, by his refusal to disclose, the Trustee has failed to keep adequate records of the administration of the trust.

115.    On information and belief, the Trustee has failed to take reasonable steps to enforce the claims of the trust.

116.    The Trustee has failed to keep the beneficiary reasonably informed about the administration of the trust.

117.    The Trustee has failed to keep the beneficiary reasonably informed of the material

facts necessary for the beneficiary to protect his interests.

118.    The Trustee has refused to promptly respond to the beneficiary's request for information related to the administration of the trust.

119.    The Trustee has failed to report to the beneficiary regarding the trust's assets and each asset's respective market value.

120.    The Trustee failed to exercise his discretionary powers in good faith.

## FIFTH CLAIM FOR RELIEF
### (Breach of Fiduciary Duties Pursuant to § 15-5-802, *et seq.*: Clanwilliam Trust)

121.    Petitioner incorporates and realleges the previous paragraphs as if fully set forth herein.

122.    The Trustee has failed to administer the trust solely in the interest of its Beneficiary.

123.    When exercising his right to vote the Trustee did not act in the best interests of the Beneficiary.

124.    The Trustee elected or appointed directors and other managers who did not manage the corporation or enterprise in the best interests of the Beneficiary.

125.    The Trustee otherwise exercised his powers of control over the entities in a manner inconsistent with the best interests of the Beneficiary.

126.    The Trustee failed to administer the trust as a prudent person would, by considering the purposes, terms, distribution requirements, and other circumstances of the trust.

a)    A prudent person would not discourage interested purchasers.

b)    A prudent person would not sell assets for less than their true market value.

c)    A prudent person would not accept compensation on both sides of a transaction.

d)    A prudent person would not fail to respond to interested purchasers.

127.    The Trustee failed to exercise reasonable care, skill, and caution.

128.    The Trustee incurred costs that were not appropriate and reasonable in relation to the trust property.

129.    The Trustee incurred costs that were not appropriate and reasonable in relation to the purposes of the trust.

130.    The Trustee incurred costs that were not appropriate and reasonable in relation to the skills of the trustee.

131.    The Trustee has or had special skills and expertise that should have been applied for the interests of the beneficiary but were instead applied in the interests of others and the Trustee himself.

132.    In exercising his right to delegate duties and powers, the Trustee failed to exercise reasonable care, skill, and caution in selecting said agents.

133.    In exercising his right to delegate duties and powers, the Trustee failed to exercise reasonable care, skill, and caution in establishing the scope and terms of said delegation to ensure they were exercised consistently with the purposes and terms of the trust.

134.    In exercising his right to delegate duties and powers, the Trustee failed to exercise reasonable care, skill, and caution when reviewing said agents' performance and compliance.

135.    The Trustee failed to take reasonable steps to take control of and protect the trust property.

136.    On information and belief, by his refusal to disclose, the Trustee has failed to keep adequate records of the administration of the trust.

137.    On information and belief, the Trustee has failed to take reasonable steps to enforce the claims of the trust.

138.    The Trustee has failed to keep the beneficiary reasonably informed about the administration of the trust.

139.    The Trustee has failed to keep the beneficiary reasonably informed of the material facts necessary for the beneficiary to protect his interests.

140.    The Trustee has refused to promptly respond to the beneficiary's request for information related to the administration of the trust.

141.    The Trustee has failed to report to the beneficiary regarding the trust's assets and each asset's respective market value.

142.    The Trustee failed to exercise his discretionary powers in good faith.

## SIXTH CLAIM FOR RELIEF
### (Breach of Fiduciary Duties Pursuant to § 15-5-802, *et seq.*: ECL Trust)

143.    Petitioner incorporates and realleges the previous paragraphs as if fully set forth herein.

144.    The Trustee has failed to administer the trust solely in the interest of its Beneficiary.

145.    When exercising his right to vote the Trustee did not act in the best interests of the Beneficiary.

146.    The Trustee elected or appointed directors and other managers who did not manage the corporation or enterprise in the best interests of the Beneficiary.

147.    The Trustee otherwise exercised his powers of control over the entities in a manner inconsistent with the best interests of the Beneficiary.

148.    The Trustee failed to administer the trust as a prudent person would, by considering the purposes, terms, distribution requirements, and other circumstances of the trust.

a)    A prudent person would not run a one hundred-million-ninety-five dollar portfolio into bankruptcy in two years.

b)      A prudent person would not sell assets for less than their true market value.

149.    The Trustee failed to exercise reasonable care, skill, and caution.

150.    The Trustee incurred costs that were not appropriate and reasonable in relation to the trust property.

151.    The Trustee incurred costs that were not appropriate and reasonable in relation to the purposes of the trust.

152.    The Trustee incurred costs that were not appropriate and reasonable in relation to the skills of the trustee.

153.    The Trustee has or had special skills and expertise that should have been applied for the interests of the beneficiary but were instead applied in the interests of others and the Trustee himself.

154.    In exercising his right to delegate duties and powers, the Trustee failed to exercise reasonable care, skill, and caution in selecting said agents.

155.    In exercising his right to delegate duties and powers, the Trustee failed to exercise reasonable care, skill, and caution in establishing the scope and terms of said delegation to ensure they were exercised consistently with the purposes and terms of the trust.

156.    In exercising his right to delegate duties and powers, the Trustee failed to exercise reasonable care, skill, and caution when reviewing said agents' performance and compliance.

157.    The Trustee failed to take reasonable steps to take control of and protect the trust property.

158.    On information and belief, by his refusal to disclose, the Trustee has failed to keep adequate records of the administration of the trust.

159.    On information and belief, the Trustee has failed to take reasonable steps to enforce

the claims of the trust.

160.    The Trustee has failed to keep the beneficiary reasonably informed about the administration of the trust.

161.    The Trustee has failed to keep the beneficiary reasonably informed of the material facts necessary for the beneficiary to protect his interests.

162.    The Trustee has refused to promptly respond to the beneficiary's request for information related to the administration of the trust.

163.    The Trustee has failed to report to the beneficiary regarding the trust's assets and each asset's respective market value.

164.    The Trustee failed to exercise his discretionary powers in good faith.

## SEVENTH CLAIM FOR RELIEF
### (Demand for Accounting)

165.    Petitioner incorporates and realleges the previous paragraphs as if fully set forth herein.

166.    The Trustee has failed in all instances to provide even basic financial documents to the Beneficiaries he serves.

167.    Both the Beneficiaries and the Settlors are entitled to review basic records for each asset the Trustee manages, and each of their subsidiaries, to oversee the Trustee's management and ensure decisions have been made in the best interest of the beneficiaries.

## EIGHTH CLAIM FOR RELIEF
### (Emergency Preliminary Injunction Pursuant to F.R.C.P. 65(a))

168.    Petitioner incorporates and realleges the previous paragraphs as if fully set forth herein.

169.    The Petitioner has demonstrated a reasonable probability of success on the merits

of Petitioner's cause of action to remove Wilson as trustee from the Trusts. Wilson's actions as Trustee have repeatedly violated the prudent person fiduciary duty requirements pursuant to C.R.S. § 15-5-802:

a)      A prudent person would not discourage interested purchasers.

b)      A prudent person would not fail to provide required information for SEC filings and related audits in order to block a transaction that was worth more than $300 million above previous bids for Clanwilliam.

c)      A prudent person would not sell assets for less than their true market value.

d)      A prudent person would not accept compensation on both sides of a transaction.

e)      A prudent person would not intentionally fail to respond to several interested purchasers.

f)      A prudent person would not do side deals which harm the settlor and beneficiary to the trust.

170.    The danger of a sale of Clanwilliam at a price $300 million below the value of the assets is real and immediate given that Wilson is currently negotiating terms with TAA for the sale of Clanwilliam and is expected to sign a binding purchase agreement in a matter of weeks if the requested relief is not granted.

171.    Wilson has already shown he is ready and willing to violate the terms of the Trusts and sell assets far below their actual value in transactions related to the ECL Trust and the UKAT Trust.

172.    Lindberg, as ultimate beneficial owner of the Clanwilliam Trust assets, will suffer irreparable harm of potentially over $300 million in damages if a sale of Clanwilliam is permitted to go forward at a below market valuation.

173.    Lindberg has no other remedy at law or by contract to prevent the sale of Clanwilliam since Wilson has ignored Lindberg's veto rights on the sale.

174.    Granting a preliminary injunction to prevent any action to further the sale of Clanwilliam will serve the public interest by ensuring that Clanwilliam is only sold at its fair market value, thus providing maximum benefit to the insurance lenders and their policyholders who are relying on Clanwilliam as collateral for loans made to Triton and other holding companies above Triton.

175.    Ultimately, thousands of insurance company policyholders are relying on the value of Clanwilliam assets as security for their policy benefits. Allowing Wilson to pursue a sale of Clanwilliam for his own interests directly harms these policyholders by over $300 million.

176.    Furthermore, the sale is being advanced without any plan on how the proceeds from the sale of Clanwilliam will ultimately contribute to the full payoff of policyholders. Lindberg has repeatedly demanded a full global resolution for policyholder payoffs and these requests have been repeatedly ignored. Lindberg has also presented numerous plans for a full global resolution of all obligations owed to the insurance lenders and Lindberg's proposals have been repeatedly rejected without explanation.

177.    Upon information and belief, the sale of Clanwilliam is being undertaken solely for the benefit of Wilson, his partners, his partner's clients, and for the benefit of M3 Partners, a financial consultant and "chief restructuring officer" for an intermediary holding company which owns Triton, the Settlor to the Clanwilliam Trust.

178.    Over Lindberg's objections, M3 Partners has demanded over $1 million per month in fees and has suggested that the Clanwilliam sale proceeds be used to pay these fees for a period of up to 4.5 years, amounting to over $52 million in fees.

179.    There is no harm in enjoining any sale from occurring given that the largest insurance lender has stated that they "are not interested in payoffs at this time" and the debt owed to this insurance lender is not due until June 30, 2029.

180.    Wilson is pursuing a sale of Clanwilliam for his own interests and the interests of his law partners at Latham & Watkins, not because of any demand from the largest insurance lender to Lindberg's group of companies for a payoff.

181.    Upon information and belief, Wilson also has a side deal with M3 Partners where he agreed to resign from the Beckett Trust (another trust where Lindberg is the sole economic beneficiary) in exchange for M3 Partners appointing its own employees to the Triton board to attempt to force a sale of Clanwilliam despite Mr. Lindberg's veto rights over such sale.

182.    An injunction will preserve the status quo while the claims herein are adjudicated by this court.

183.    An injunction will also preserve the status quo relating to recent joint filings by Lindberg and the United States of America in Federal Court. Upon a joint motion of Lindberg and the United States of America on December 20, 2024, a Special Master relating to certain of Lindberg's assets including Clanwilliam was requested to be appointed by the Federal Court for the Western District of North Carolina.

184.    On January 23, 2025 the Federal Court for the Western District of North Carolina entered an Order Appointing Special Master (the "Order") which requires all asset sales related to the Damovo Group Trust, the HME Trust, the Clanwilliam Group Trust and several other trusts managed by Wilson as trustee to be approved by the WDNC Federal Court *before* they can proceed.

185.    A true and correct copy of the WDNC Federal Court Order is attached hereto as

Exhibit C. Paragraphs 3(c) and 3(d) of the Order clearly require court WDNC Federal Court approval for any sale of assets related to the Primary Restitution Assets which include the assets of the Damovo Group Trust, the HME Trust, and the Clanwilliam Group Trust.

186.    Wilson has not received approval from the Federal Court for the Western District of North Carolina for the Clanwilliam transaction or for any other transaction related to the Primary Restitution Assets.

187.    In light of the above, the Petitioner has demonstrated all of the *Rathke* factors required for the issuance of a preliminary injunction. See Rathke v. MacFarlane, 648 P.2d at 653–54 (citations omitted):

a)    a reasonable probability of success on the merits; see: Combined Communications Corp. v. Denver, 186 Colo. 443, 528 P.2d 249 (1974); O'Connell v. Colorado State Bank, 633 P.2d 511 (Colo.App.1981);

b)    a danger of real, immediate, and irreparable injury which may only be prevented by injunctive relief; see: American Investors Life Insurance Co. v. Green Shield Plan, Inc., 145 Colo. 188, 358 P.2d 473 (1960);

c)    that there is no plain, speedy, and adequate remedy at law; see: *American Investors Life Insurance Co. v. Green Shield Plan, Inc.*, supra;

d)    that the granting of a preliminary injunction will not disserve the public interest; *American Television and Communications Corp. v. Manning,* supra;

e)    that the balance of equities favors the injunction; see: *Combined Communications Corp. v. Denver*, supra;

f)    that the injunction will preserve the status quo pending a trial on the merits; see: *Combined Communications Corp. v. Denver*, supra; Graham v. Hoyl, 157 Colo. 338, 402 P.2d

604 (1965); Rivera v. Civil Service Commission, 34 Colo.App. 152, 529 P.2d 1347 (1974).

## E.  REQUEST FOR RELIEF

a.   **Void all transactions** entered into by the Trustee to sell trust assets over the objection of Petitioner and/or the Beneficiaries pursuant to C.R.S. §§ 15-5-1012 and § 15-5-1001(i) or to impose a lien or constructive trust on trust property;

b.   **Trace all trust property** wrongfully disposed of and **recover the property** or its proceeds pursuant to C.R.S. § 15-5-1001(2)(i);

c.   Ordering the Trustee to perform the Trustee's duty to provide **financial records** for all entities the trusts hold interests in pursuant to C.R.S. § 15-5-1001(2)(a) and (d);

d.   Appoint a **special fiduciary** under the control of the Federal Special Master per the terms of the WDNC Federal Court Order to take possession of all trust property and administer each trust pursuant to C.R.S. § 15-5-1001(2)(e);

e.   Suspend the Trustee pursuant to C.R.S. § 15-5-1001(2)(f) or **remove the Trustee** pursuant to C.R.S. § 15-5-1001(2)(g);

f.   Enter an **Emergency Preliminary Injunction** per F.R.C.P. 65(a) to enjoin the Trustee from **selling any property** held in any and all trusts related to the Petitioner, including the Damovo Group Trust, the HME Trust, and the Clanwilliam Group Trust pursuant to C.R.S. § 15-5-1001(2)(b) until such time as the Federal Special Master is appointed as a special fiduciary over all trust assets per the terms of the WDNC Federal Court Order attached hereto as Exhibit C;

g.   Compel the Trustee to restore to each Trust all property conveyed without the

consent of the Settlor and/**or pay to the Trust** the difference between the value of the asset conveyed and the price accepted pursuant to C.R.S. § 15-5-1001(2)(c) including paying the Petitioner for all losses caused by trustee's negligence in selling assets below their market value, including sale of the Eye Care Leaders Trust assets and the UKAT Trust assets at far below their market value.

h.  Compel the Trustee to return excess fees billed to each Trust pursuant to C.R.S. § 15-5-1001(2)(c) and to **disgorge all compensation** billed during his period of mismanagement and self-dealing pursuant to pursuant to C.R.S. § 15-5-1001(2)(h);

i.  **Sanction** the Trustee pursuant to C.R.S. § 15-5-1001(2)(c); and

j.  For any such further relief as the Court deems just and proper.

# EXHIBIT A

EXECUTION VERSION

DATED      4 November      2020

## TRITON FINANCIAL LIMITED

## AND

## GEORGE A. VANDEMAN

## AND

## HUGH S. WILSON

---

## IRREVOCABLE TRUST INSTRUMENT

### RELATING TO A CHANGE OF CONTROL TRUST FOR THE CLANWILLIAM GROUP

---

# LATHAM & WATKINS

London
99 Bishopsgate
London EC2M 3XF
(44) 020 7710 1000 (Tel)
(44) 020 7374 4460 (Fax)

## TABLE OF CONTENTS

### CONTENTS

| Clause | | Page |
|---|---|---|
| 1. | DEFINITIONS AND INTERPRETATION | 3 |
| 2. | ESTABLISHMENT OF TRUST | 7 |
| 3. | DURATION OF THE TRUST | 8 |
| 4. | POWERS OF THE TRUSTEE | 8 |
| 5. | EXERCISE OF POWERS AND RESTRICTIONS ON EXERCISE | 9 |
| 6. | TRUSTEE WARRANTIES AND UNDERTAKINGS | 10 |
| 7. | POWERS OF THE BENEFICIARY | 11 |
| 8. | PROVISION OF INFORMATION TO TRUSTEES | 11 |
| 9. | CONFIDENTIALITY | 11 |
| 10. | RESIDUAL TRUSTS AND END OF TRUST PERIOD | 12 |
| 11. | TREATMENT OF DIVIDENDS | 12 |
| 12. | VOTING | 12 |
| 13. | INDEPENDENCE OF CLANWILLIAM GROUP BOARDS | 13 |
| 14. | EXONERATION OF TRUSTEES | 13 |
| 15. | INDEMNITY | 14 |
| 16. | APPOINTMENT, RETIREMENT AND REMOVAL OF TRUSTEES | 14 |
| 17. | REMUNERATION AND PAYMENT OF TRUST COSTS | 16 |
| 18. | CLAIMANT'S OBLIGATIONS | 16 |
| 19. | RIGHTS OF SETTLOR CREDITORS | 16 |
| 20. | TAX MATTERS | 16 |
| 21. | NOTICES | 17 |
| 22. | AMENDMENT OF TRUST INSTRUMENT | 17 |
| 23. | ACKNOWLEDGMENTS REGARDING SECURITY INTERESTS | 17 |
| 24. | COUNTERPARTS | 18 |
| 25. | ASSIGNMENT | 18 |
| 26. | THIRD PARTY RIGHTS | 18 |
| 27. | LAW | 18 |
| SCHEDULE 1  ADMINISTRATIVE POWERS | | 1 |
| SCHEDULE 2  TRUSTEE REMUNERATION | | 2 |

EU-DOCS\29987307

**THIS TRUST INSTRUMENT** is made the    4    day of    November  2020

**BETWEEN**:

(1)     **TRITON FINANCIAL LIMITED** a company registered in Ireland (no. 534652) whose registered office is at Office Suite 17, The Courtyard Carmanhall Road Sandyford, Dublin 18 Ireland ("**the Settlor**");

(2)     **GEORGE A. VANDEMAN** whose address is at 7906 Berger Avenue, Playa Del Rey, CA 90293 USA ("**George A. Vandeman**");

(3)     **HUGH S. WILSON** whose address is at 575 Circle Drive, Denver, Colorado 80206-4112 USA ("**the Original Trustee**"); and

each, a "**Party**" and together, the "**Parties**"

**RECITALS**

A.  The Settlor, as legal and beneficial owner of the entire issued share capital of the Company (as defined below), has resolved to put in place the trust constituted by this Instrument so that, during its term, GL (as defined below) shall not have any ability to direct or influence save in the limited situations specified by this Instrument, or continue to be the ultimate beneficial owner of, the Clanwilliam Group (as defined below).

B.  As more particularly set out in the terms of this Instrument the assets to be acquired by the Trust shall be the entire issued and outstanding and future class of A Ordinary shares of EUR 0.00001 each in the capital of the Company (as defined below) (the "**A Ordinary Shares**") representing 100 per cent of the voting rights available to members of the Company and related rights, the Trust is irrevocable and only capable of dissolution in limited, prescribed circumstances, the Trustees are and will be independent of GL and shall not include a Restricted Person and the Beneficiaries shall not include GL or any GL Affiliate (as defined below).

C.  The Settlor and the Original Trustee shall enter into the Trust Note (as defined below).

D.  The Trust hereby created shall, save to the extent expressly or impliedly excluded, be made subject to the provisions of the Trustee Act 1925 and the Trustee Act 2000.

**NOW THIS INSTRUMENT WITNESSES** as follows:

**1.     DEFINITIONS AND INTERPRETATION**

1.1     In this Instrument unless the context otherwise requires the following expressions have the following meanings respectively:-

"**Adverse Proceeding**" means the appeal and final resolution of the jury verdict in the trial of Greg Lindberg in the Western District of North Carolina;

"**Beneficiary**" means George A. Vandeman or such other person or persons as designated from time to time by the Settlor as a Beneficiary in addition to or in place of George A. Vandeman or any other Beneficiary so designated (or both) by giving no less than 5 business days' notice in writing of such designation to the Trustees, provided that such person shall not include GL or any GL Affiliate;

"**Clanwilliam Group**" means together or separately the Company and any subsidiaries and subsidiary undertakings of the Company from time to time;

3

"**Code**" means the Internal Revenue Code of 1986 of the United States, as amended from time to time;

"**Company**" means Clanwilliam Headquarters Limited a company registered in Ireland (no. 607970) whose registered office is at Office Suite 17, The Courtyard Carmanhall Road Sandyford, Dublin 18 Ireland;

"**Control**" means with respect to any specified person, the power to direct the management and policies of such person, directly or indirectly, whether through the ownership of voting securities, by contract or otherwise; and the terms "controlling" and "controlled" shall have meanings relative to the foregoing. Without limiting the generality of the foregoing, a person shall be deemed to Control any other person in which it owns, directly or indirectly, more than 50% of the ownership interests;

"**Disposition**" means a sale encumbrance, lien on or other disposition or disposal of all or any portion of the Trust Assets directly or indirectly; any partial disposition via issuance of shares, restricted shares; any issuance of employee stock-based compensation; the sale or other disposition of all or a material portion of the assets of the Company or any subsidiary; or the merger or other conversion of the Company; other than by reason of (i) any enforcement action taken under any of the Security Documents; or (ii) the application of such Trust Assets towards the Trust Costs as permitted herein;

"**Facility Agent**" means Global Loan Agency Services Limited in its capacity as facility agent for the Finance Parties as defined in the Senior Facility;

"**Further Share Charge and Security Assignment**" means a share charge and security assignment entered into on or about the date of this Instrument by the Original Trustee in favour of the Security Agent, granting security over the Shares, Receivables and related rights;

"**GL**" means Greg Lindberg whose address is at 410 S. Rampart #390, Las Vegas, NV 89145.

"**GL Affiliate**" means (i) Global Growth Holdings Inc.; (ii) a corporation, limited partnership, general partnership, limited liability company, joint venture, association, company or other organisation under the Control of GL or Global Growth Holdings Inc.; and (iii) any person with a familial relationship with GL including, but not limited to, GL's current, former or (if applicable) future spouse or any of GL's children (natural or adopted);

"**Global Growth Holdings Inc**." means Global Growth Holdings Inc., a company registered in Delaware (no. 7918372) whose registered office is at 251 Little Falls Drive, Wilmington, Delaware 19808, c/o Corporation Service Company, United States;

"**Group Company**" means any company within the Clanwilliam Group;

"**Intercreditor Agreement**" means the intercreditor agreement dated 8 November 2018, as amended from time to time, made between, among others, the Company, the Debtors (as defined in the Intercreditor Agreement), the Security Agent, the Facility Agent and the Settlor (as Original Subordinated Creditor);

"**Maturity Date**" means the earlier of:

(a)     the occurrence of a Disposition involving the sale or transfer of all Trust Assets;

(b)     the enforcement of Transaction Security (as defined in the Intercreditor Agreement) pursuant to clause 10 (*Enforcement of Transaction Security*) of the Intercreditor Agreement, which results in the sale or transfer of all Trust Assets; or

(c)     the date of 30 September 2030;

4

"**Original Security Assignment**" means a security assignment entered into by the Settlor in favour of the Security Agent, in respect of any Receivables and Related Rights (as defined therein), dated 8 January 2019;

"**Original Share Charge**" means a share charge entered into by the Settlor in favour of the Security Agent, granting security over the Shares and Related Investment Rights (as defined therein), dated 8 November 2018;

"**Original Trustee**" has the meaning given in the Parties section of this Instrument;

"**person**" means a natural person, corporation, limited partnership, general partnership, limited liability company, joint venture, association, company, trust, bank trust company, land trust, business trust, statutory trust, or other organisation, whether or not a legal entity, and a government or agency or political subdivision thereof;

"**Receivables**" has the meaning given in the Original Security Assignment;

"**Regulations**" means U.S. Treasury Regulations promulgated under the Code;

"**Related Trustee**" means a trustee in respect of a trust settled by Global Growth Holdings, Inc. or any other GL Affiliate or business interest of GL from time to time where such trustee is required pursuant to the relevant terms of the trust to act independently from GL, any GL Affiliate or any business interest of GL provided that such trustee does not have a personal or other relationship (apart from a business relationship in its role as such a trustee);

"**Representatives**" means, in relation to a Party, its respective employees, agents, external legal advisers, accountants, consultants and financial advisers and, in the case of a company, also its respective directors and officers and providers of finance (and any of their respective employees, agents and external advisors);

"**Restricted Person**" means GL, any GL Affiliate and any other person who has personal, contractual, business, familial or other relationship with GL, Global Growth Holdings Inc. or any other of GL's Affiliates or business interests from time to time, in each case extending to any entity that was a GL Affiliate even if they are no longer a GL Affiliate but for the purposes of this definition: (i) a GL Affiliate shall exclude any existing member of the board of directors of an existing Group Company; and (ii) an individual shall not be considered to be a Restricted Person solely by reason of being a Related Trustee (and being party to agreements relating to their performance of that role);

"**Security Agent**" means GLAS Trust Corporation Limited in its capacity as security agent for the Secured Parties as defined in the Senior Facility;

"**Security Documents**" means the Original Share Charge, the Original Security Assignment, the Further Share Charge and Security Assignment; and the Intercreditor Agreement;

"**Senior Facility**" means the senior term facilities agreement dated 8 November 2018, as amended from time to time, made between: (i) the Company; (ii) the Original Borrowers (as defined therein); (iii) the Original Guarantors (as defined therein); (iv) CEDL I S.À R.L., CEDL 1 (Levered) S.À R.L., Alcentra European Direct Lending (Levered) Fund II (Holding) SCSP, CEDL SMA S.À R.L., CEDL III S.À R.L., CEDL III (Levered) S.À.R.L. and Alcentra European Direct Lending (Levered) Fund III (Holding) SCSP (together, the "**Alcentra Lenders**"); (v) the Original Lenders (as defined therein); (vi) the Facility Agent; and (vii) the Security Agent;

"**Senior Lenders**" means the Alcentra Lenders or the Lenders (as defined in the Senior Facility);

5

"**Settlor Group**" means together or separately the Settlor and any subsidiaries and subsidiary undertakings of the Settlor from time to time;

"**Shares**" means all of the class A Ordinary shares in the Company issued and outstanding on or around the date of this Instrument pursuant to the Subscription Letter, together with any future class A Ordinary shares in the Company issued or transferred to the Trustees to hold on the terms of the Trust;

"**Subscription Letter**" means the letter dated the same date as this Instrument pursuant to which the Original Trustee subscribes for the Shares;

"**Tax**" means:

(a)    all taxes, levies, imposts, duties, social security contributions, surcharges, charges or withholdings, in each case in the nature of taxes, whether of Ireland or elsewhere and shall include any amount payable as a consequence of any claim, direction, order or determination of any tax authority competent to impose, administer, levy, assess or collect any of the foregoing;

(b)    any amount of tax which is the subject of or results in a charge, security or right to sell imposed by, or provided by statute to, a tax authority over any of the assets of the Trust; and

(c)    all interest, penalties, surcharges, fines and other charges relating to any of the above or to a failure to make any return, comply with any reporting requirements or supply any information in connection with any of the above and the cost of removing any charge or other encumbrance imposed by a tax authority,

whether or not directly or primarily chargeable against or attributable to the Trustees and regardless of whether any Trustees has, or may have any right of reimbursement against any other person;

"**Trust**" means the trust created by this Instrument;

"**Trust Assets**" means the Shares, and all cash, property income, capital accretion or otherwise representing or derived from the Shares, any receivables and all related rights during the Trust Period (including all Related Investment Rights under and as defined in the Original Share Charge) and such other assets (if any) as the Trustees may come to hold on the terms of the Trust following the date of this Instrument;

"**Trust Costs**" has the meaning given in Clause 17.2;

"**Trust Documents**" means this Instrument and the Trust Note;

"**Trust Note**" means the promissory note dated on or around the date of this Instrument issued to the Settlor by the Trustees;

"**Trust Period**" has the meaning given in Clause 3; and

"**Trustees**" means the Original Trustee while serving as trustee and such other person or persons as may be the trustees or trustee in place of or in addition to the Original Trustee for the time being, appointed by the Settlor in accordance with Clause 14 and "**Trustee**" means any one of them.

For the purpose of the interpretation of this Instrument:

(a)    words denoting the singular shall include the plural and vice versa;

6

(b)     words denoting the masculine gender shall include the feminine gender and vice versa;

(c)     no account shall be taken of clause headings which have been inserted for ease of reference only;

(d)     references to any statutory provision shall be read and construed to references to such provision as is amended or re-enacted from time to time;

(e)     references to clauses and Schedules are to be read and construed as references to clauses and Schedules of this Instrument;

(f)     general words shall not be given a restrictive meaning because they are followed by words which are particular examples of the acts, matters or things covered by the general words and "including", "include" and "in particular" shall be construed without limitation;

(g)     references to a person's loss of or ceasing to have "capacity" or being subject to an "incapacity" or similar shall mean any legal, physical or mental disability which renders that person incapable of managing his own affairs or in the case of a Trustee the administration of the Trust and the decision of the Settlor reached in good faith and after such inquiry as the Settlor deems appropriate as to when such disability exists or ceased to exist or does not exist shall be conclusive and binding and neither the Settlor nor the Trustees shall be liable for any action which may be taken by them or any other person pursuant to any such decision;

(h)     a reference to the Settlor shall include, where appropriate, any successor company resulting from any reconstruction or amalgamation of the Settlor; and

(i)     a reference to the Facility Agent and the Security Agent shall include that person's (and any subsequent) successors in title, permitted assignees and permitted transferees and any person for the time being appointed Facility Agent in accordance with the Senior Facility and any person for the time being appointed as Security Agent in accordance with the Debt Documents (as defined in the Security Documents), as the case may be.

## 2.    ESTABLISHMENT OF TRUST

2.1     The Settlor and the Original Trustee by execution of this Instrument intend to and establish the Trust which shall operate as an irrevocable trust and shall be administered by the Trustees in accordance with this Instrument.

2.2     The Original Trustee shall be the first Trustee of the Trust.

2.3     The Settlor shall have the power to designate from time to time any person or persons to be a Beneficiary whether in addition to or in place of George A. Vandeman or any other Beneficiary so designated (or both) by giving no less than 5 business days' notice in writing of such designation to the Trustees, provided that such person shall not include GL or any GL Affiliate and such a designation may specify the shares in which the Beneficiaries shall be entitled to the Trust Assets. The Settlor shall promptly provide a copy of any such notice to the Facility Agent.

2.4     On every change in the Beneficiaries in accordance with Clause 2.3 a memorandum should be endorsed on or permanently annexed to this Instrument stating the names and addresses of the persons who are the Beneficiaries for the time being. The Trustee shall be entitled to rely on such memorandum (of the latest memorandum if more than one) as sufficient evidence that the persons named therein are duly designated Beneficiaries.

2.5     The Trustees shall hold the Trust Assets during the Trust Period on trust for each Beneficiary equally or in such shares as may be designated by the Settlor in any notice designating a Beneficiary.

## 3.      DURATION OF THE TRUST

3.1     Subject to Clause 3.2 below, the Trust shall remain in existence and endure for the period beginning on the date of this Instrument and ending on the first occurring of:

(a)     the reversal of the conviction in the Adverse Proceeding via reversal, acquittal, dismissal, final decision of the government to not re-try the case following any mistrial or remand for new trial, pardon, commutation or other exoneration or discharge of any sentence, provided such reversal, acquittal, dismissal or decision is final with no further right to appeal, retrial or other recourse available to the government, together with written confirmation from the Company that the expiration of the Trust will not materially adversely affect the operations of the Group (to be determined in consultation with the Facility Agent (acting on the instructions of the Senior Lenders)); or

(b)     the Trustees being satisfied (having consulted with the board of the Company) that the Trust is no longer required by reason of another trust having been interposed in the ownership structure such that no Restricted Person will become the ultimate beneficial owner of the Group following termination of the Trust; or

(c)     the death of GL; or

(d)     the Maturity Date; or

(e)     the termination of the Trust as required pursuant to a final and binding court order,

(the "**Trust Period**").

3.2     The Trust Period shall only end in accordance with Clause 3.1 above if;

(a)     the Trustee has notified the Facility Agent if any of the above events occur; and

(b)     in each case;

(i)     any time up to and including the Discharge Date (as defined in the Intercreditor Agreement), security has been or will be put in place to replace the security granted pursuant to the Security Documents in a form and substance satisfactory to the Security Agent; or

(ii)    the Security Agent has confirmed in writing that the Security Period has ended under the relevant Security Documents at that time.

## 4.      POWERS OF THE TRUSTEE

4.1     Subject to the provisions of Clause 5 below, The Trustees shall have all powers necessary and desirable to exercise all rights, privileges and discretions related to the Trust Assets at their absolute discretion including, but not limited to, those powers as set out in Schedule 1 to this Instrument insofar as the exercise of those powers shall not be inconsistent with the trust created by this Instrument.

4.2     During the Trust Period, without prejudice to Clause 10.1 the Trustees shall use all powers available to them pursuant to this Instrument to procure that no part of the Trust Assets (including the Shares and any other Trust Assets from time to time) shall be transferred directly

8

or indirectly to a Restricted Person and such Trust Assets shall, at all times until the Discharge Date (as defined in the Intercreditor Agreement) remain subject to the security created in favour of the Security Agent.

4.3     Each power shall be a separate power in addition to and without prejudice to the generality of all other powers vested in the Trustees, subject to the provisions of Clause 5 below and the Trustees may exercise all or any of those powers from time to time, without the intervention of any Beneficiary, in such manner and to such extent as the Trustees in their absolute discretion see fit.

4.4     In the exercise of their powers and discretions, the Trustees may consider any recommendations made to them by the Company's board of directors but the Company's board of directors shall have no power to direct the Trustees to comply with such recommendations.

4.5     Notwithstanding the powers conferred on the Trustees by virtue of this Instrument or applicable law, none of the Trustees shall be obliged by this Instrument or by applicable law to perform any service or action other than or additional to:

(a)     being the legal owner(s) of the Shares and any other Trust Asset, subject to and in accordance with this Instrument for the benefit of the Beneficiary;

(b)     attending, in person or by proxy, and voting at the extraordinary general meetings or annual general meetings of the Company;

(c)     complying with the obligations of the Trustee under this Instrument, the Trust Note and the Security Documents; and

(d)     making a Disposition of Trust Assets back to the Settlor in accordance with this Instrument,

without prejudice to the foregoing the Trustees shall not owe a duty of care to any Group Company.

## 5.     EXERCISE OF POWERS AND RESTRICTIONS ON EXERCISE

5.1     No power, authority or discretion conferred on the Trustees by this Instrument or by law shall (despite anything to the contrary expressed or implied in this Instrument) be exercised if it causes any part of the Trust Assets to become applicable for the benefit of a Restricted Person (provided, however, that it is stipulated that a payment of any amounts owing to the Settlor pursuant to Clause 10.1, or any payments on the Trust Note, whether of principal, fees, or interest, shall not be a violation hereof) and shall not constitute a Disposition.

5.2     The Trustees shall:

(a)     not make or enter into an agreement to make a Disposition (including pursuant to paragraph (b) below) without the prior written consent of the Settlor;

(b)     not make a Disposition to the Settlor or any Restricted Person other than upon expiry of the Trust Period by reason of the events or circumstances described in sub-Clause 3.1(a); and

(c)     to the extent that is reasonably practicable, co-operate with the Settlor in respect of a broader refinancing of the Settlor Group.

5.3     The Trustees shall use such powers as are then available to it in their capacity as registered holder of the Shares to procure that:

(a)     no Group Company shall enter into any arrangements in respect of any refinancing of the Senior Facility without the prior written approval of the Settlor; and

(b)     the Clanwilliam Group shall, to the extent that is reasonably practicable, co-operate with the Settlor in respect of a broader refinancing of the Settlor Group.

5.4     The Trustees shall not and are not permitted to perform any business of the Trust in the Republic of Ireland.

## 6. TRUSTEE WARRANTIES AND UNDERTAKINGS

6.1     Each Trustee hereby warrants, represents and undertakes to the Settlor that:

(a)     Save, in the case of a Trustee that is a Related Trustee, in relation the representations below which relate to its business relationship or fees received in connection with any Related Trustee role that the relevant Trustee holds from time to time (and any agreements relating to the performance by the Trustee of that role):

(i)     it is independent of, and not associated with, and does not have any personal, business or other relationship with, GL, any GL Affiliate or any Restricted Person;

(ii)     it is, independent of, and not associated with, and does not have any personal, business or other relationship with any entity, business, asset or person owned by GL any GL Affiliate or any Restricted Person or, to the best of its knowledge, any entity, business, asset or person controlled, directly or indirectly, GL, any GL Affiliate or any Restricted Person; and

(iii)     to the best of its knowledge and belief, it has not received any financial support or assistance, other than the Fees paid or payable by the Trust under this Instrument, from GL, any GL Affiliate or any Restricted Person;

(b)     excluding the Trust Assets and any assets of any trust of which the relevant Trustee is a Related Trustee, it does not own, directly or indirectly, any shares, rights, warrants or options to acquire or subscribe for, any shares or other securities, any other voting interest, or any property or interest in property in the Company or any entity owned or controlled by GL ,any GL Affiliate or any Restricted Person;

(c)     it is capable of and shall at all times perform its duties as Trustee independent of, and without any influence from, GL, any GL Affiliate or any Restricted Person;

(d)     it is capable of and shall at all times perform its duties as Trustee in accordance with all applicable laws;

(e)     it is not and will not become resident in the United Kingdom for United Kingdom tax purposes and does not and will not act as Trustee in the course of a business which it carries on in the United Kingdom through a branch, agency or permanent establishment there; and

(f)     it is not and will not become a Restricted Person.

6.2     Each Trustee covenants and undertakes to the Settlor to ensure that the matters as set out in sub-clauses 6.1(a)(i) to 6.1(f) shall remain true and correct for as long as it remains a trustee of the Trust.

7.      **POWERS OF THE BENEFICIARY**

7.1     Save as provided by law, the Beneficiaries shall have no powers in the respect of the Trust or the Trust Assets during the Trust Period.

8.      **PROVISION OF INFORMATION TO TRUSTEES**

8.1     The Trustees shall be entitled to rely upon any information relevant to the Trust and the Trust Assets supplied to them by the Settlor, by the Facility Agent, by the Security Agent or by any Group Company, or any Representative or agent thereof, as conclusive evidence of the matter to which it relates and without prejudice to the generality of Clause 15 shall (fraud, wilful misconduct and gross negligence excepted) be in no way liable to the Settlor, the Beneficiary or any other person claiming for any loss caused or allegedly caused as a consequence of the Trustees relying on such information.

8.2     Without prejudice to the Trustee's duties in respect of the Trust, the Trustees may but are not required to retain at the expense of the Trust and to rely upon the expertise of independent consultants in performing their duties.

8.3     The Settlor and the Beneficiary confirm that the Trustees shall be entitled to rely on (i) Principal Amount of the Trust Note as being representative of fair market value for the Shares; and (ii) a rate of 25% as being an appropriate rate of interest, in each case as at the date of this Instrument for the purpose of agreeing the principal value and rate of interest to be included in the Trust Note and in full satisfaction of the Trustee's duties to agree the same under the Trust.

9.      **CONFIDENTIALITY**

9.1     Subject to Clauses 9.2 and 9.3, each Party:

        (a)     shall treat as strictly confidential the provisions of this Instrument and any confidential information relating to the Clanwilliam Group which they receive in connection herewith (whether before or following the date of this Instrument) (together "**Confidential Information**"); and

        (b)     shall not, except with the prior written consent of the other Parties (which shall not be unreasonably withheld or delayed), make use of (save for the purposes of performing its obligations under this Instrument) or disclose to any person (other than its Representatives in accordance with Clause 9.2) any Confidential Information.

9.2     Clause 9.1 shall not apply if and to the extent that the Party using or disclosing Confidential Information can demonstrate that:

        (a)     such disclosure is or reasonably appears to be required by law or by any stock exchange or any supervisory, regulatory, governmental or anti-trust body having applicable jurisdiction, (including, for the avoidance of doubt, any tax authority having applicable jurisdiction); or

        (b)     the Confidential Information concerned has come into the public domain other than through its fault (or that of its Representatives) or the fault of any person to whom such Confidential Information has been disclosed in accordance with this Clause 9.

9.3     Each Party undertakes that it shall (and shall procure that its affiliates shall) only disclose Confidential Information to Representatives where it is reasonably required for the purposes of exercising its rights or performing its obligations under this Instrument or the other Trust Documents and only where the Representatives are informed of the confidential nature of the Confidential Information and the provisions of this Clause 9. In addition, the Parties agree that to the extent that any public communication, press announcement or any formal communication

11

is required to be made in connection with this Instrument and the matters contained herein, each Party shall, acting in good faith, consult with the other Parties and take into account any reasonable feedback prior to making such announcement or communication.

9.4 The provisions of this Clause 10 shall survive termination or lapse, as the case may be, and shall continue for a period of five years from the date of this Instrument or (if later) two years from the date following the termination of this Instrument.

9.5 In no event shall any Trustee be required to make a public announcement or communication, save for any announcements or communication required by applicable laws or regulation.

## 10.    RESIDUAL TRUSTS AND END OF TRUST PERIOD

10.1 At the end of the Trust Period, the Trust Assets shall be first used to settle in full all amounts owing on the Trust Note and, subject to (i) full repayment and settlement of the Trust Note; and (ii) the Discharge Date (as defined in the Intercreditor Agreement) having occurred, the Trustees shall (subject to any prior exercise by them of their powers under this Instrument) make arrangements for the distribution of any residual Trust Assets to one or more of the Beneficiaries then living and in such proportion(s) equally or otherwise as may have been designated in writing to the Trustees by the Settlor.

10.2 Subject to the terms of the Senior Facility, a transfer by the Trustees to the Settlor of the Trust Assets (including the proceeds of any Disposition) on the Maturity Date or, if earlier, the termination of this Instrument shall constitute the payment to the Settlor by the Original Trustee or any other Trustee who has acceded to the Trust Note as debtor of the Principal Amount (as defined in the Trust Note) plus all accrued but unpaid interest (after provision of all Trust Costs) in full, regardless of whether the value of the Trust Assets shall have decreased below the outstanding balance of the Principal Amount (as defined in the Trust Note) (plus all accrued but unpaid interest) at the time of such payment.

10.3 For the purposes of valuing the Shares at the end of the Trust Period the Trustees shall use a valuation multiple no greater than the valuation multiple used to determine the Principal Amount in the Trust Note (being a valuation multiple of 16.1 x EBITDA on a debt free cash free basis).

## 11.    TREATMENT OF DIVIDENDS

11.1 Subject to Clause 11.2, following any deductions required for all Trust Costs as set forth in Clause 17, the Trustee shall use all net cash from any cash dividends received by the Trust in relation to the Shares to make interest payments in respect of the Trust Note pursuant to the terms as set out in therein and such payment shall not be deemed to be Disposition.

11.2 The Trustees acknowledge that dividends shall only be made by the Company on the Shares in compliance with law and subject to the terms of the Senior Facility.

## 12.    VOTING

12.1 Subject to the provisions in Clause 5, the Trustees shall be entitled to vote in respect of the Shares held in the Trust Assets at any general meeting of the Company.

12.2 None of the Beneficiaries and no Restricted Person shall be entitled in any way to compel, control or force the exercise in any particular manner of any voting or other rights which may from time to time be exercisable by the Trustees.

12.3 The Trustees shall be entitled to rely on all information as set forth in Clause 8 in exercising their rights to vote Shares.

13.    **INDEPENDENCE OF CLANWILLIAM GROUP BOARDS**

13.1    During the Trust Period, the Trustees shall use such powers as are available to them in their capacity as registered holder of the Shares to procure that there shall be:

(a)    no change to the board of directors of the Company, except in the event of death, resignation or disability of a director; and

(b)    no Restricted Person shall be a member of any board of directors of any member of the Clanwilliam Group.

13.2    The Trustee(s) shall consult with the Senior Lender prior to any changes to the board of directors of the Company; or any board of directors of any other member of the Clanwilliam Group in so far as the Trustee is aware of any proposed change to the board of directors of any member of the Clanwilliam Group.

14.    **EXONERATION OF TRUSTEES**

14.1    None of the Trustees shall be liable for any loss or damage to the Trust Assets or the income thereof arising from any improper investment or purchase made or retained by the Trustees or other action taken or omitted to be taken by the Trustees (subject to the terms of this Instrument) in good faith unless such loss or damage is attributable to fraud, wilful misconduct or gross negligence on the part of the Trustees (or any of them).

14.2    The Trustees shall:

(a)    be under no obligation to procure that the Trust prospers;

(b)    be under no obligation to ensure that the Trust Assets increase in value;

(c)    be under no obligation to ensure that Trust diversifies or makes any investment for and on behalf of the Trust;

(d)    save to the extent the same is as a result of the Trustee's own gross negligence, wilful misconduct, bad faith or fraud, not be liable for any loss, reduction in value, destruction, damage, seizure or sequestration of the Trust Assets (or any part thereof) to the Settlor or any Beneficiary; or

(e)    be under no obligation to take any action in relation to the Trust unless that action is appropriately funded in compliance with applicable law from the Trust Assets available to the Trustee.

14.3    Save to the extent the same is as a result of the Trustee's own gross negligence, wilful misconduct, bad faith or fraud, neither the Settlor nor any Beneficiary shall have recourse to any of the personal assets of Trustees as a result of any breach of the terms of this Instrument, including but not limited to any enforcement action brought against the principal private residence or any other residence maintained by any Trustee. Save to the extent the same is as a result of the Trustee's own gross negligence, wilful misconduct, bad faith or fraud, the Trust Assets shall be the only source of funds to satisfy a claim for damages by the Settlor against the Trustee for any reason. None of the Trustees shall be considered to have a conflict of interest by virtue of the fact that any of them have personal investments in industries or businesses of a similar nature of any business or going concern carried out by any part of the Trust Assets from time to time.

14.4    None of the Trustees shall be liable as above for a delegation or appointment made, or permitted to continue, by the Trustees, absent fraud, wilful misconduct or gross negligence.

13

14.5    The duty of care imposed upon the Trustees by law is not excluded by any term of this Instrument.

## 15.    INDEMNITY

15.1    No Trustee shall be liable for any loss or damage to the Trust Assets (or any part thereof) or to the Settlor or any Beneficiary, caused by any act or omission of the Trustee, or other event or thing whatsoever, whether with respect to trust administration, modification, investment, management or distribution, any election, allocation or division, or the purchase or retaining of any property legally requiring remedial action or any other matter pertaining to the Trustee's services as such, unless the loss or damage is due to the Trustee's own gross negligence, wilful misconduct, bad faith or fraud or a breach of the Trustee's obligations under the Intercreditor Agreement (herein "**Indemnified Acts**"). Each Trustee serving at any time with respect to a trust hereunder shall be fully indemnified from the Trust Assets, subject at all times to the provisions of the Senior Facility and the Security Documents, (and thereafter, if the Trust Assets cannot adequately indemnify the Trustees, will be indemnified by the Settlor and the Settlor shall procure indemnification from the Settlor Group) for any liability, attorneys' fees or other reasonable expenses or costs incurred by, or judgment, amount paid in settlement or other damages assessed against, the Trustee with respect to all Indemnified Acts, and such amounts incurred in defending an action brought or threatened in respect of Indemnified Acts may be paid out of the Trust Assets in advance of final disposition upon delivery to the Settlor of a legal opinion of trust counsel that indemnification is likely to be warranted and the Trustee's written agreement to refund such amounts if it is ultimately determined that indemnification is not warranted.

15.2    Unless the Trustees have actual notice that an event has occurred affecting the beneficial interests in any trust hereunder, the Trustees shall not be liable to any beneficiary for distributions made as though the event had not occurred.

15.3    In addition, the Trustee shall have the benefit of all powers, privileges and immunities conferred upon a trustee by statute or by the law of England and Wales.

15.4    This Clause 15 survives the completion of any Trustee's service as Trustee and the termination of this Instrument.

## 16.    APPOINTMENT, RETIREMENT AND REMOVAL OF TRUSTEES

16.1    Any Trustee may, at any time, by written notice given to the Settlor, the Facility Agent and any co-trustee, retire from office one month after the date when the notice is received by the Settlor and the Facility Agent (or any shorter period agreed in writing by the Settlor and the Facility Agent, acting on the instructions of the Senior Lenders) provided that where the retiring Trustee is the sole Trustee any such retirement shall take effect upon the appointment by the Settlor of a replacement Trustee pursuant to Clause 16.3.

16.2    Following consultation with the Facility Agent (on behalf of the Senior Lenders) the Settlor may:

(a)    remove any Trustee from office by giving 30 days' prior written notice to that Trustee (unless such notice is waived by such Trustee and subject to as provided in Clause 16.3) without giving any reason for the removal. This power can only be exercised if there will be, on the removal, at least one remaining person as Trustee, or if the Trustee simultaneously designates a replacement Trustee;

(b)    appoint a person (or persons) in place of any Trustee who ceases to be a Trustee for any reason; and

(c)    appoint additional Trustees (without limitation as to number),

14

in each case provided that no Restricted Person shall be appointed as a Trustee at any time and provided that the new Trustee(s) shall accede to this Instrument, the Trust Note and the relevant Security Documents and the Intercreditor Agreement.

16.3    In the event that a Trustee gives notice to retire from office, dies, ceases to have capacity, becomes bankrupt or insolvent or unable to pay its debts as they fall due the Settlor shall, following consultation with the Facility Agent (on behalf of the Senior Lenders), replace the relevant Trustee (and in the event of the Trustee's death, loss of capacity, bankruptcy or insolvency, the removal of the relevant Trustee may be made immediately by written notice) provided that no Restricted Person shall be appointed as a Trustee at any time and provided that the new Trustee(s) shall accede to this Instrument, the Trust Note and the relevant Security Documents and the Intercreditor Agreement.

16.4    Subject to the requirements set out in Clause 16.2, any person may be appointed as Trustee, on the terms and conditions the Settlor agrees with that person, wherever that person is domiciled or resident (or is incorporated or carries on business, if it is a corporation), save that no person may be appointed as Trustee if it is resident in the United Kingdom for United Kingdom tax purposes or if it will act as Trustee in the course of a business which it carries on in the United Kingdom through a branch, agency or permanent establishment there or, if it is a corporation, if it is incorporated in any part of the United Kingdom.

16.5    A retiring or removed Trustee shall execute all transfers or other documents, and do all acts necessary to vest the Trust Assets in the new or continuing Trustees. A retiring or removed Trustee who is liable under this Instrument in any way shall not be bound to transfer the Trust Assets unless reasonable security is provided to indemnify that Trustee against the liability. In the event that the retiring or removed Trustee fails to take such acts the continuing Trustee or, in the case where the sole Trustee has retired or been removed, the Beneficiary shall have the power to execute all transfers or other documents, and do all acts necessary to vest the Trust Assets in the new or continuing Trustees, provided that reasonable security is provided to indemnify the retiring or removed Trustee against the liability.

16.6    Unless there is a sole Trustee, this Clause 16.6 shall govern the proceedings of the Trustees:

(a)    the trusts, powers and discretions vested in the Trustees by this Instrument shall be exercised by all the Trustees acting together;

(b)    without prejudice to sub-clause 16.6(a), if there are more than two Trustees then any disagreements between Trustees on the exercise of the trusts, powers and discretions vested in them shall be determined by majority vote;

(c)    without prejudice to sub-clauses 16.6(a) and 16.6(b), if no majority is reached by the Trustees in respect of a matter between Trustees on the exercise of the trusts, powers and discretions vested in them, then the Settlor may pursuant to the terms set out in this Instrument (i) appoint a replacement Trustee; or (ii) appoint an additional Trustee, in each case such that a majority vote can be reached; and

(d)    unless otherwise agreed by the Trustees, a resolution in writing signed by each Trustee (whether on the same document or in counterparts) shall be as valid as if it has been passed at a meeting of the Trustees.

16.7    On every change in the trusteeship a memorandum shall be endorsed on or permanently annexed to this Instrument stating the names of the persons who are the Trustees for the time being and shall be signed by the persons so named. Any person dealing with the affairs of this Trust shall be entitled to rely upon any such memorandum (or the latest of such memoranda if more than one) as sufficient evidence that the persons named therein are duly constituted the Trustees.

15

17.    **REMUNERATION AND PAYMENT OF TRUST COSTS**

17.1    Each Trustee shall be remunerated by the Trust out of the Trust Assets subject to the Senior Facility and the Security Documents in such amount and on such terms as set out in Schedule 2 to this Instrument.

17.2    The Trustees shall, subject at all times to the provisions of the Senior Facility and the Security Documents, pay from the Trust Assets all trust costs and Taxes, including, but not limited to expenses incurred in the establishment of the Trust and any costs and Taxes incurred in connection with the establishment of the Trust, in the administration and devolution of the Trust Assets, the determination and payment of Taxes thereon, the services and expenses of agents retained by the Trustees in execution of their duties and other expenses described in this Instrument (the "**Trust Costs**"), and the Trustees shall be entitled to reimbursement for any Trust Costs incurred and advanced on behalf of the Trust. To the extent that the Trustees consider that there is not sufficient cash in the Trust Assets to pay or reimburse such expenses they shall request payment by the Company and the Company shall, subject to compliance with applicable laws and its obligations under the Senior Facility, the Intercreditor Agreement and the Security Documents, make such payment.

18.    **CLAIMANT'S OBLIGATIONS**

18.1    Any person entitled to, or claiming, any benefit under the Trust shall produce any evidence and information required by the Trustees for the purposes of the Trust. Payment of any benefit under the Trust to any person shall be conditional on that person producing any evidence or information that the Trustees may require.

18.2    The Trustees shall be entitled to deduct from any benefit payable any Tax or duty for which the Trustees are or may be liable in respect of the benefit concerned.

18.3    The Trustees shall not be accountable for, or obliged to see to, the application of any payment made under this Instrument if it is made:

(a)    directly to a minor, to his parent or guardian or to the person with whom he resides; or

(b)    to any individual or institution who or which is or appears to be responsible for the care of a person to whom the payment is otherwise to be made;

if the Trustees in their absolute discretion consider that that person's incapacity does not warrant their making the payment to him direct.

19.    **RIGHTS OF SETTLOR CREDITORS**

19.1    Nothing in this Instrument and the Trust hereby constituted is intended to impact on the rights of any existing creditors of the Settlor or its affiliates.

20.    **TAX MATTERS**

20.1    The Trust shall not constitute a "business trust" within the meaning of Regulations Section 301.7701-4(b) or any other business entity for federal income tax purposes, but shall instead constitute a trust within the meaning of Regulations Section 301.7701-4(c) and a "grantor trust" under Subpart E of Part 1, Subchapter J of the Code (Code Sections 671 and following) in the United States. As such, all income and deductions of the Trust are treated for income tax purposes as income and deductions of the Settlor.

20.2    The Settlor and the Trustees agree that they will file all tax returns in a manner consistent with the intent set out in Clause 20.1 unless otherwise required by a taxing authority. Except as otherwise expressly provided herein, any tax elections required or permitted to be made by the

16

Trust under the Code or otherwise will be made by the Settlor. The Trust will not elect to be treated as a corporation for any tax purpose. In addition, notwithstanding any other provision of this Agreement, the Trustees shall pay to the Settlor such amounts from the net income of the Trust as shall be necessary for the Settlor pay any U.S. or non-U.S. federal, state and local income tax on the net income of the Trust that is required to be paid by the Settlor or its owners pursuant to Subpart E of the Code and the comparable provisions of any state or local income tax law or regulation. For purposes of this Clause 20.2, the "Settlor" shall include the person (individual or entity) ultimately liable for payment of U.S. or non-U.S. federal, state, and local income tax on the income of the Trust that is deemed to pass through the Settlor for Tax law purposes. The amount payable by the Trust to the Settlor for a particular tax period pursuant to this Clause 20.2 shall be determined based on a reasonable estimate of the amount of Tax that would be due based on the highest applicable tax rate applied to the amount of net income of the Trust for that tax period that would be deemed to pass through to the Settlor from the Trust. The Trust shall pay the amount required pursuant to this Clause 20.2 at least 10 days prior to the relevant statutory deadline for payment of the applicable Tax.

20.3    Notwithstanding the foregoing provisions of this Clause 20, if the Trustee shall receive any notice of Tax due or deficiency from any jurisdiction that has or appears to have taxing authority over the Trust, nothing shall prevent the Trustees from satisfying such amounts from the Trust Assets.

## 21.    NOTICES

Any notice or information to be given hereunder by the Settlor to the Trustees shall be validly given if it is signed by any member of the board of directors of the Settlor or such person or persons as are authorised by the Board.

## 22.    AMENDMENT OF TRUST INSTRUMENT

The Trustees may at any time by deed amend any of the provisions of this Instrument in any respect, provided that such amendment shall not have effect if:

(a)    it would affect the purpose of the Trust;

(b)    it would confer on the Settlor or any Restricted Person a benefit or possibility of a benefit out of the Trust Assets or income thereof except to the extent contemplated hereunder and pursuant to the Trust Note;

(c)    it would extend the power conferred in this Clause 22 to remove the restrictions in this Clause;

(d)    it would reduce or adversely affect the right or interest of any Beneficiary insofar as such right or interest has been granted, awarded or allocated pursuant to the prior exercise by the Trustees of their powers under this Instrument;

(e)    the deed making the amendment has not been executed by the Settlor (unless the Settlor is in liquidation or has previously confirmed in writing to the Trustees that its consent to any future amendment is no longer necessary); or

(f)    it would be in breach of the Intercreditor Agreement.

## 23.    ACKNOWLEDGMENTS REGARDING SECURITY INTERESTS

Each Trustee and each Beneficiary hereby acknowledges for the benefit of the Security Agent and the Senior Lenders the security granted over the Trust Assets pursuant to the Security Documents and each Trustee and each Beneficiary irrevocably acknowledges that the Security Agent may take any enforcement action over any or all of the Trust Assets in accordance with

17

the Security Documents (including the exercise of any power of sale, appropriation and appointment of a Receiver (as defined in the Security Documents) over any or all of the Trust Assets and/or the exercise of any powers by any such Receiver in respect of such Trust Assets), and apply the proceeds of any such enforcement action in accordance with the Security Documents without any requirement for further consent from, consultation with or notification to any Trustee or Beneficiary. The occurrence of any such action shall not be deemed a default by any of the Trustees of their obligations hereunder.

## 24.    COUNTERPARTS

This Instrument may be executed in any number of counterparts and by the parties on separate counterparts but shall not be effective until each Party has executed at least one counterpart and each counterpart shall constitute an original of this Instrument but all other counterparts shall together constitute one and the same instrument.

## 25.    ASSIGNMENT

25.1    Without prejudice to the security interests granted pursuant to the Senior Facility, no benefits or rights under this Instrument can be assigned, charged or alienated in any way. No payment shall be made in respect of any benefit or right if:

(a)    the person entitled to it has, to the knowledge of the Trustees, purported to assign or charge that payment (or any part of it or any interest in it); or

(b)    the Trustees know of any act or event which would or may reasonably result in the benefit or right (or any part of or interest in it) belonging to that person to become vested in, or charged in favour of, any person(s) other than that person or his legal personal representatives.

25.2    Subject to other provisions of this Instrument, the Trustees shall have full discretion as to the payment or application of any benefit forfeited to, or for the benefit of, such person.

## 26.    THIRD PARTY RIGHTS

26.1    The named beneficiaries shall be entitled to the rights and benefits of, and rely on, Clause 23 and shall, in each case, have the right to enforce the relevant terms by reason of the Contracts (Rights of Third Parties) Act 1999.

26.2    Except as provided for in Clause 26.1, a person who is not a party to this Instrument shall have no right under the Contracts (Rights of Third Parties) Act 1999 to enforce any of its terms.

26.3    Subject to the provisions of the Intercreditor Agreement, each party represents to the other that their respective rights to terminate, rescind or agree any amendment, variation, waiver or settlement under this Instrument are not subject to the consent of any person that is not a party to this Instrument.

## 27.    LAW

27.1    The Trust and the Instrument and any non-contractual obligations arising out of or in connection therewith shall be governed by and construed in accordance with the laws of England and Wales.

27.2    The Parties (and each Group Company) shall submit to the exclusive jurisdiction of the English courts, in relation to any dispute or claim arising under the Trust, this Instrument or any non-contractual obligation arising out of or in connection therewith, notwithstanding that one or more of the Trustees may from time to time be resident or domiciled elsewhere than in England.

This agreement has been entered into as a deed on the date stated at the beginning of it.

SIGNED and DELIVERED for and on behalf of and as a deed of
**TRITON FINANCIAL LIMITED**
by its lawfully appointed attorney

in the presence of:

Signature of Witness: *Kathryn Schueller*

Name of Witness: KAthryn Schueller

Address of Witness: 4916 W. 139th St
Hawthorne, CA. 90250

Occupation of Witness: Executive Assistant

SIGNED AND DELIVERED as a Deed by **HUGH S. WILSON** in the presence of

_Terry W. Tyler_

**HUGH S. WILSON**   . . . . . . . . . . . . . . . . . . . . . . . . . . .

In the presence of

Name:   Terry W Tyler

Address:   49 Smollan Cicle #4866
Santa Rosa Beach, FL 32459 USA

Position:   Retired physician

SIGNED AND DELIVERED as a Deed by **GEORGE A. VANDEMAN** in the presence of

_____

**GEORGE A. VANDEMAN**

In the presence of

Name:           Kathryn Schueller

Address:        4916 W. 139th Street

                Hawthorne, CA 90250

Position:       Executive Assistant

# SCHEDULE 1

## ADMINISTRATIVE POWERS

Subject to the limitations set forth herein, the Trustees powers shall include, but shall not be limited to:

1.1    the power to receive notice of, attend and vote at any general meeting of the ordinary shareholders of the Company, including all or any adjournment of such meetings;

1.2    the power to sign any resolution as the registered holder of the Shares;

1.3    the power to complete and return proxy cards, consents to short notice and any other documents required to be signed by the registered holder of the Shares;

1.4    the power to otherwise execute, deliver and do all deeds, instruments and acts insofar as may be done in the Trustees' capacity as the registered holder of the Shares in exercising its powers as Trustees under the Trust;

1.5    to power to insure the Trust Assets (to the extent appropriate);

1.6    the power to procure that each of the Trustees obtains professional indemnity insurance for so long as they are a Trustee of the Trust together with any run-off cover deemed prudent by the relevant Trustee in respect of such professional indemnity insurance;

1.7    the power to perform the obligations of the Trustees under the Trust Note;

1.8    the power to perform the obligations of the Trustees under this Instrument;

1.9    the power to open a bank account or bank accounts for and on behalf of the Trust and carry on normal banking processes;

1.10    the power to file any tax returns the Trustees may determine in their absolute discretion are required and pay (or refrain from paying) Taxes and estimated income taxes on any reasonable basis the Trustees may determine in their absolute discretion without any liability whatsoever for overpayment, underpayment or non-payment of such Taxes or for any loss, interest or penalty because of such overpayment, underpayment or non-payment;

1.11    the power to collect, compromise, release or otherwise settle claims; to institute suits (at law or in equity); to collect any property or interest of the Trust Assets; to be reimbursed for expenses of litigation; and to be indemnified out of the Trust Assets for all such expenses prior to instituting any such legal action;

1.12    the power to accept the payment or transfer of further assets to the Trustees to hold on the terms of the Trust whether from the Settlor or a third party, where the Trustees believe that this is necessary or beneficial for the operation of the Trust; and

1.13    the power to amend this Instrument (i) to comply with any relevant court order; or (ii) to cure ambiguities or correct minor errors that are not inconsistent with the other provisions of this Instrument.

1

## SCHEDULE 2

## TRUSTEE REMUNERATION

1.1    The Original Trustee shall be paid the sum of EUR 20,000 (plus VAT, if applicable) per month (the "**Fees**"), for as long as it remains a Trustee. The Fees shall be paid out of the Trust Assets.

1.2    The Fees shall be paid into a bank account nominated in writing by the Original Trustee in arrears on the date falling three, six, nine or twelve months following the date of this Instrument (or on the Business Day next following such date to the extent that such date is not a Business Day) and on the same dates in every subsequent year.

1.3    Any other Trustee shall have his or its remuneration determined by the Settlor at the time of appointment of such Trustee and the terms of such remuneration shall be recorded in the relevant deed of accession to this Instrument.

1.4    Any Trustee shall be deemed to be an independent contractor and nothing in this Instrument shall give rise to an employment relationship between the Trustee (or its director or officers) and any other entity. No Trustee shall be required to perform his or its duties in Ireland or any other locale.

2

EXECUTION VERSION

DATED _____ 25 June _____ 2021

### TRITON FINANCIAL LIMITED

### AND

### HUGH S. WILSON

_____

### AMENDMENT AND RESTATEMENT DEED

RELATING TO A TRUST NOTE IN RESPECT OF THE CHANGE OF CONTROL TRUST
FOR THE CLANWILLIAM GROUP
_____

## LATHAM & WATKINS

London
99 Bishopsgate
London EC2M 3XF
(44) 020 7710 1000 (Tel)
(44) 020 7374 4460 (Fax)

## TABLE OF CONTENTS

**Clause**                                                                                                                                                           **Page**

**1.     DEFINITIONS AND INTERPRETATION** ............................................................................ 2

**2.     SUPPLEMENTAL PROVISION** ........................................................................................ 2

**3.     COUNTERPARTS** ............................................................................................................. 2

**4.     GOVERNING LAW AND JURISDICTION** ...................................................................... 2

EXECUTION VERSION

**THIS AGREEMENT** is made on    25 June    2021

**BETWEEN**:

(1)    **TRITON FINANCIAL LIMITED** a company registered in Ireland (no. 534652) whose registered office is at Office Suite 17, The Courtyard Carmanhall Road Sandyford, Dublin 18 Ireland ("**the Settlor**"); and

(2)    **HUGH S. WILSON** whose address is at 575 Circle Drive, Denver, Colorado 80206-4112 USA ("**the Original Trustee**");

    each, a "**Party**" and together, the "**Parties**"

**WHEREAS**

(A)    The parties hereto entered into a promissory note on 4 November 2020 relating to the establishment of a change of control trust for the Clanwilliam Group (as defined therein) (the "**Trust Note**").

(B)    The parties have agreed to enter into this Agreement in order to amend the terms of the Trust Note in the manner set out below For the avoidance of doubt, this Agreement shall be entered into in compliance with Clause 12 of the Trust Note.

**IT IS AGREED THAT**

**1.    DEFINITIONS AND INTERPRETATION**

    Terms used in this Agreement shall, unless otherwise defined herein or the context otherwise requires, bear the meaning ascribed to them in the Trust Note.

**2.    AMENDMENT AND RESTATEMENT OF THE TRUST NOTE**

2.1    With effect from the date of this Agreement, the Trust Note shall be amended and restated as set out in Schedule 1 (*Amended and Restated Trust Note*).

**2.2**    Except as varied by the terms of this Agreement, the Trust Note will remain in full force and effect and any reference in the amended and restated Trust Note or the Trust Note to the Trust Note will be construed as a reference to the amended and restated Trust Note, or that provision, as amended and restated by this Agreement.

**3.    COUNTERPARTS**

    This Agreement may be executed in any number of counterparts. Each counterpart shall constitute an original of this agreement but all the counterparts together shall constitute but one and the same instrument.

**4.    GOVERNING LAW AND JURISDICTION**

4.1    This Agreement and any non-contractual rights or obligations arising out of or in connection with it shall be governed by and construed in accordance with the laws of England and Wales.

4.2    The Parties (and each Group Company) shall submit to the exclusive jurisdiction of the English courts, in relation to any dispute or claim arising under the Trust, this Agreement or any non-contractual obligation arising out of or in connection therewith, notwithstanding that one or more of the Trustees may from time to time be resident or domiciled elsewhere than in England.

**SCHEDULE 1**

**AMENDED AND RESTATED TRUST NOTE**

EXECUTION VERSION

# PROMISSORY NOTE

**Principal Amount: USD 305,000,000**

**Dated: _____ 2020** (the "**Effective Date**")

1. **HUGH S. WILSON** whose address is at 575 Circle Drive, Denver, Colorado 80206-4112 USA ("the **Original Trustee**") in his capacity as trustee of the Change of Control Trust for the Clanwilliam Group (the "**Trust**"), established by the Irrevocable Trust Instrument dated _____, 2020 (the "**Trust Instrument**"), at the behest and direction of the Settlor and the Beneficiary hereby issues this Promissory Note to **TRITON FINANCIAL LIMITED** a company registered in Ireland (no. 534652) whose registered office is at Office Suite 17, The Courtyard Carmanhall Road Sandyford, Dublin 18 Ireland ("the **Settlor**") in consideration for the Settlor agreeing to the arrangements necessary to accommodate, and ancillary to, the issue to the Trustee of the Trust to hold on the terms of the Trust of 15,000,000 A Ordinary Shares of EUR 0.00001 each in the capital of Clanwilliam Headquarters Limited a company registered in Ireland (no.126018) (the "**Company**") at a price of EUR 0.00001 per share pursuant to the Subscription Letter (as defined in the Trust Instrument) (the "**Shares**").

2. Unless defined in herein, any terms shall have the same meaning as set out in the Trust Instrument. All references to the Original Trustee in this Promissory Note shall be to the Original Trustee in his capacity as trustee of the Trust.

3. The Original Trustee for value received promises to pay to the Settlor the principal amount of USD 305,000,000 ("**Principal Amount**") plus any accrued, but unpaid interest thereon, from the Trust Assets, on the Maturity Date (as defined in the Trust Instrument).

4. Notwithstanding Clause 3 above, the Original Trustee may with the approval of the Settlor pay to the Settlor the Principal Amount (in whole or in part) prior to the Maturity Date (as defined in the Trust Instrument) and, to the extent that the Original Trustee pays to the Settlor an amount in respect of part of the Principal Amount prior to the Maturity Date in lieu of an equivalent Cash Interest Payment, the resulting PIK Interest compounded and added to the Principal Amount shall not exceed the Principal Amount so repaid.

5. The Original Trustee hereby unconditionally promises to pay to the order of the Settlor interest compounded annually, on the unpaid Principal Amount of this Promissory Note, for the period from and including the date hereof to, but excluding, the Maturity Date (as defined in the Trust Instrument) as follows:

    a. The Principal Amount shall bear interest payable in cash on the outstanding balance thereof at a rate per annum equal to twenty-five percent (25.00%), and shall be payable hereunder in arrears on the first business day of each fiscal quarter (i.e., on the first business day of each of January, April, July and October) (an "**Cash Interest Payment**") from assets available for payment pursuant to clause 11.1 of the Trust Instrument and the law, provided, however, to the extent any such accrued Cash Interest Payment (or any portion thereof) is not paid on the date such payment is due and payable, such unpaid amount shall, subject as provided in Clause 4 above, be automatically, without any further action of the Original Trustee or the Settlor, compounded and added to the outstanding Principal Amount on the date that such interest is accrued (the "**PIK Interest**"). Any such PIK Interest shall, after being capitalised, be treated for all purposes of this Promissory Note as part of the Principal Amount of this Promissory Note. For the avoidance of doubt, the non-payment of the Cash Interest Payment on the schedule described herein shall not constitute an Event of Default (as defined below) hereunder.

    b.   All interest accrued hereunder but unpaid as of the day preceding the Maturity Date (as defined in the Trust Instrument) shall be payable in cash on the Maturity Date (as defined in the Trust Instrument).

    c.   Failure by the Original Trustee to pay all or a portion of interest or principal when due as a result of insufficient available Trust Assets (after deduction of Trust Costs as set forth in the Trust Instrument) or application of the law shall not be deemed a default hereunder.

6.   Notwithstanding any other provisions hereof a transfer by the Original Trustee to the Settlor of the Trust Assets (including the proceeds of any Disposition) on the Maturity Date (as defined in the Trust Instrument) or, if earlier, the termination of the Trust Instrument shall constitute the payment to the Settlor by the Original Trustee of the Principal Amount plus all accrued but unpaid interest (after provision of all Trust Costs) in full, regardless of whether the value of the Trust Assets shall have decreased below the outstanding balance of the Principal Amount (plus all accrued but unpaid interest) at the time of such payment.

7.   Notwithstanding any other provisions hereof, the Original Trustee's obligations pursuant to the terms of this Promissory Note shall be subject to the rights of the Senior Lenders and the Security Agent (as defined in the Trust Instrument) as set out in the Senior Facility and the restrictions on payments of dividends, distributions and other payments to direct or indirect shareholders under the Senior Facility. To the extent that there is an "*Event of Default*" as defined in the Senior Facility which results in the enforcement of the security held by the Security Agent on behalf of the Senior Lenders, then the obligations of the Original Trustee pursuant to this Promissory Note shall be satisfied by the Original Trustee paying any net proceeds received by the Original Trustee from the Security Agent to the Settlor after paying all Trust Costs. If no net proceeds are received, the obligations of the Original Trustee pursuant to this Promissory Note shall be deemed satisfied. If such net proceeds after expenses exceed the amount then owing on this Promissory Note the excess funds shall remain subject to the terms of the Trust in accordance with the Trust Instrument.

8.   If one or more of the following events shall occur and be continuing (each an "**Event of Default**"):

    a)   the Original Trustee shall default in the payment of any principal or interest on this Promissory Note when due and any such default shall have continued unremedied for thirty (30) or more days after notice thereof by the Settlor to the Original Trustee (provided, however, that the failure to make a Cash Interest Payment and the resulting automatic compounding and adding of PIK Interest shall not constitute an Event of Default hereunder);

    b)   the Original Trustee or any successor trustee materially breaches any provision of the Trust Instrument and such breach, if capable of remedy, is not remedied within a reasonable time; or

    c)   any material provision of this Promissory Note shall for any reason cease to be valid, binding and enforceable in accordance with its terms,

THEREUPON: if not already fully due and payable at the Maturity Date (as defined in the Trust Instrument), the Settlor may, by notice to the Original Trustee, declare the Principal Amount then outstanding of, and the accrued interest on, this Promissory Note to be accelerated, whereupon such amounts shall be immediately due and payable without presentment, demand, protest or other formalities of any kind, all of which are hereby expressly waived by the Original Trustee. In such event, or if earlier due and payable, a transfer by the Original Trustee to the Settlor of the Trust Assets and termination of the Trust shall be the Settlor's only remedy and

such transfer and termination shall fulfil all obligations of the Original Trustee without regard to the value of the Trust Assets.

9.   All payments shall be made in US Dollars in immediately cleared funds, or as otherwise agreed between the Original Trustee and the Settlor, in full and without any deduction or withholding, except for deductions or withholdings required to be made by law. If any deductions or withholdings are required by law to be made from any such payments, the amount of the payment shall be increased by such amount as will, after the deduction or withholding has been made, leave the recipient of the payment with the same amount as it would have been entitled to receive in the absence of any such requirement to make a deduction or withholding.

10.  The Original Trustee hereby waives presentment, demand for payment, notice of dishonour, protest and any and all other notices or demands in connection with the delivery, acceptance, performance, default or enforcement of this Promissory Note.

11.  In no event and at no time shall the Original Trustee be obligated hereunder or otherwise to make any transfer or payment to the Settlor in excess of the Trust Assets (after deduction of Trust Costs) then held by him. Any transfer to the Settlor of the Trust Assets held by him at any time (after a reasonable reserve for Trust Costs) shall be deemed a full repayment and discharge of the obligations of the Original Trustee under this Promissory Note, including all principal and accrued interest.

12.  Any and all other provisions of this Promissory Note notwithstanding, the Original Trustee shall have no personal liability whatsoever to any person under this Promissory Note. Any sum which becomes payable in respect of this Promissory Note shall be payable solely from the Trust Assets.

13.  No variation or amendment of this Promissory Note shall be valid unless it is in writing and duly executed by or on behalf of all parties to this Promissory Note.

14.  This Promissory Note shall be binding upon the Original Trustee, any co-trustees and their successors trustees and permitted assigns. The Original Trustee may not assign this Promissory Note unless the Original Trustee has obtained the Settlor's prior written consent. At such time as the Original Trustee, any co-trustee, or any successor trustee ceases to serve as trustee of the Trust for any reason such person shall cease having any obligations under this Promissory Note.

15.  If any term or provision of this Promissory Note or the application thereof to any person or circumstance shall be invalid, illegal or unenforceable in any respect, the remainder of this Promissory Note shall be construed without such provision, and the application of such term or provision to persons or circumstances other than those as to which it is held invalid, illegal or unenforceable, as the case may be, shall not be affected thereby, and all other terms and provisions of this Promissory Note shall be valid and enforceable to the fullest extent permitted by law or equity.

16.  This Promissory Note may be executed in any number of counterparts. Each counterpart shall constitute an original of this Promissory Note but all the counterparts together shall constitute but one and the same instrument.

17.  This Promissory Note and any contractual obligations arising out of or in connection therein shall be governed by, and construed in accordance with, the laws of England and Wales. The Original Trustee irrevocably agrees that the courts in England and Wales shall have exclusive jurisdiction over any dispute or claim arising out of or in connection with this Promissory Note

This Promissory Note has been entered into as a **deed** on the date stated at the beginning of it.

SIGNED and DELIVERED for and on behalf of and as a deed of
TRITON FINANCIAL LIMITED
by its lawfully appointed attorney

in the presence of:

Signature of Witness:

Name of Witness:

Address of Witness:

Occupation of Witness:

EXECUTION VERSION

SIGNED as a Deed for and on behalf of **HUGH S. WILSON** in his capacity as Original Trustee of the Trust in the presence of _____

…………………………

Hugh S. Wilson
Original Trustee of the Trust

…………………………

Witness signature

Witness name:
Witness address;

This Agreement has been entered into on the date stated at the beginning of it.

SIGNED and DELIVERED for and on behalf of and as a deed of
**TRITON FINANCIAL LIMITED**
by its lawfully appointed attorney

in the presence of: *Kay Schuller*

Signature of Witness:

Name of Witness:    Kathy Schueller

Address of Witness:    3763 S Bentley Ave. #106
Los Angeles, CA 90034

Occupation of Witness:    Executive Assistant

*[Signature Page – Amendment and Restatement Deed (Trust Note)]*

SIGNED AND DELIVERED as a Deed by **HUGH S. WILSON** in the presence of

_____

**HUGH S. WILSON**

*Hugh S Wilson*
.......72A1B4E223E14B0..........

In the presence of

*Clare Maloney Wilson*
.....5E54868CDB7849F.........

Clare Maloney Wilson

Name:
...........................

575 Circle Drive

Address:
...........................

Denver, co 80206
...........................

N/A

Position:
...........................

# EXHIBIT B

**EIN:**

TRUST AGREEMENT

-between-

GHTG INVESTMENT, LLC, as Grantor,

-and-

HUGH STEVEN WILSON, as Trustee.

Dated: July 22, 2021

---

THE ECL TRUST

---

## TABLE OF CONTENTS

ARTICLE I          Purpose of Trust ................................................................................. 3

ARTICLE II         Trust Terms ......................................................................................... 4

ARTICLE III        General Trust Provisions ..................................................................... 9

ARTICLE IV         Additions ............................................................................................ 12

ARTICLE V          Trustee Powers ................................................................................... 12

ARTICLE VI         Investigation of Trustee's Authority .................................................. 16

ARTICLE VII        Provisions Relating to Trustees ......................................................... 16

ARTICLE VIII       Effect of Incapacity ........................................................................... 25

ARTICLE IX         Spendthrift Provisions ....................................................................... 25

ARTICLE X          Governing Law ................................................................................... 26

ARTICLE XI         Situs ................................................................................................... 26

ARTICLE XII        Accountings and Virtual Representation ........................................... 27

ARTICLE XIII       Definitions ......................................................................................... 27

ARTICLE XIV        Binding Effect; Benefit ...................................................................... 31

ARTICLE XV         Captions ............................................................................................. 31

ARTICLE XVI        Counterparts ....................................................................................... 31

ARTICLE XVII       Agreement Irrevocable; Trustee's Limited Power to Amend ............. 32

THIS TRUST AGREEMENT (this "Agreement") is hereby made as of the 22nd day of July, 2021 by and between GHTG INVESTMENT, LLC, a North Carolina limited liability company (the "Grantor"), as grantor, and HUGH STEVEN WILSON, of Denver, Colorado, as trustee.

WHEREAS, the Grantor desires to establish a trust for the purposes hereinafter mentioned;

NOW, THEREFORE, for good and valuable consideration, the Grantor hereby transfers to the Trustee (as defined in Subdivision A of Article VII of this Agreement) the property described in Schedule "A" annexed hereto, the receipt of which property is hereby acknowledged by the Trustee,

TO HAVE AND TO HOLD said property, IN TRUST (to be known as the "ECL Trust"), upon the following terms:

ARTICLE I

Purpose of Trust

The purposes of the trust are (i) to hold, on the terms and conditions provided for herein, all of the membership interests in and to each Operating Company (as defined in Subdivision J of Article XIII of this Agreement), indirectly through the Holding Company (as defined in Subdivision F of Article XIII of this Agreement), the membership interests of which will be sold to the trust by the Grantor in exchange for a promissory note (the "Promissory Note"), (ii) to provide for the membership interests of the Companies to be held, directly or indirectly, and controlled by the Trustee in accordance with the terms hereof, (iii) to ensure that said membership interests are not owned or controlled, directly or indirectly, by (a) GREG EVAN LINDBERG, (b) any spouse or issue of Greg Evan

Lindberg, (c) any Excluded Person (as defined in Subdivision E of Article XIII of this Agreement), (d) any spouse or issue of any Excluded Person, or (e) any person who is related or subordinate (as described in Subdivision M of Article XIII) to any person described in clause (a), (b), (c) or (d) above, and (iv) to provide for the Beneficiaries (as defined in Subdivision C of Article II of this Agreement) on the terms and subject to the limitations herein set forth.

ARTICLE II

Trust Terms

A.    DISCRETIONARY DISTRIBUTIONS OF INCOME.  Subject to the succeeding provisions of this Agreement, the Trustee shall manage, invest and reinvest the trust assets and the Independent Trustee (as defined in Subdivision A of Article VII of this Agreement) may, at any time and from time to time, pay to or apply for the benefit of any one or more of the Beneficiaries (as defined in Subdivision C of this Article) so much or all of the net income of the trust as the Independent Trustee shall determine to be necessary to provide for the health, support and maintenance of any one or more of the Beneficiaries; provided, however, that payments to or applications for the benefit of any one Beneficiary shall not exceed Twenty Thousand Dollars ($20,000) in any one calendar year, and, provided further, that no such payment or application shall be made that would jeopardize the ability of the trust to make any payments required under the Promissory Note.  Any balance of net income not so paid or applied shall be added to principal annually.  The Independent Trustee is authorized to make such payments or applications to and among the Beneficiaries, to the exclusion of any one or more of them, in such proportions and at such time or times as it shall determine, subject to the limitation that

4

payments to or applications for the benefit of any one Beneficiary shall not exceed Twenty Thousand Dollars ($20,000) in any one calendar year.

B.    <u>TAX DISTRIBUTIONS TO THE GRANTOR</u>.    In addition, the Trustee shall pay to the Grantor such amounts from the net income of the trust as shall be necessary for the Grantor pay any Federal, state and local income tax on the net income of the trust that is required to be paid by the Grantor pursuant to Subpart E of the Code and the comparable provisions of any state or local income tax law or regulation.  In no event shall the Trustee have any power to distribute any membership interests in any Company to the Grantor to satisfy this obligation prior to the termination of the trust.

C.    <u>BENEFICIARIES</u>.  The "Beneficiaries" of this trust shall be the members of the class consisting of (i) Robert Gaddy, and (ii) any other individual or Qualified Charity (as defined in Subdivision L of Article XIII of this Agreement) added to the class of Beneficiaries by the Grantor pursuant to Subdivision D of this Article.  Each individual member of the class of Beneficiaries is referred to herein as a "Beneficiary".

D.    <u>GRANTOR'S    POWER    TO    ADD    AND    REMOVE BENEFICIARIES</u>.  At any time and from time to time the Grantor may, by a written instrument executed by the Grantor and delivered to the Trustee, (i) add any individual or Qualified Charity to the class of Beneficiaries, and (ii) remove any individual or Qualitied Charity from the class of Beneficiaries; provided, however, that the Grantor may not add any of the following to the class of Beneficiaries (a) GREG EVAN LINDBERG, (b) any spouse or issue of Greg Evan Lindberg, (c) any Excluded Person, (d) any spouse or issue of any Excluded Person, or (e) any person who is related or subordinate to any person described in clause (a), (b), (c) or (d) above.

5

E.    <u>GRANTOR'S LIMITED POWER OF APPOINTMENT</u>. The
Grantor shall have the power, exercisable by specific reference to this power in a written
instrument executed by the Grantor and delivered to the Trustee at any time prior to the
termination of the trust, to direct the Trustee to pay so much or all of the principal of the
trust and any income then accrued or on hand, to such person, persons or Qualified
Charities, in such shares and proportions and either outright or upon such estates and trusts,
as the Grantor may designate and appoint in said written instrument, provided, however,
that the Grantor shall have no power to appoint any part of the principal or income of the
trust to or for the benefit of (a) GREG EVAN LINDBERG, (b) any spouse or issue of Greg
Evan Lindberg, (c) any Excluded Person, (d) any spouse or issue of any Excluded Person,
or (e) any person who is related or subordinate to any person described in clause (a), (b),
(c) or (d) above (any such person described in clause (a), (b), (c), (d) or (e) above, a
"Restricted Person").

F.    <u>POSSIBLE TERMINATION AND REVERSION TO THE
GRANTOR</u>. Upon the first to occur of the following, the trust will terminate and the
Trustee will pay the then principal of the trust, and any income then accrued or on hand, to
the Grantor:

1.    The reversal of any potential conviction in the Adverse Proceeding
(as defined in Subdivision A of Article XIII of this Agreement) via reversal, acquittal,
dismissal, decision of the United States not to re-try the case following any mistrial or
remand for new trial, pardon or other exoneration, or the completion, termination or
expiration of any sentence imposed as a result of the Adverse Proceeding (any such
occurrence, a "Reversal"), provided that, if such Reversal shall occur prior to a Disposition

(as defined in Subdivision D of Article XIII of this Agreement), the trust shall not terminate unless and until (i) the Trustee has determined that the termination of the trust and the reversion of the trust assets to the Grantor will not materially adversely affect the operations of the Operating Company, and (ii) the Trustee has provided advanced written notice of the termination, and the reversion of the trust assets to the Grantor, to any agency having regulatory authority over the Operating Company;

2.    On the first date prior to a Disposition but subsequent to a Reversal that the Trustee shall determine that the termination of the trust and the reversion of the trust assets to the Grantor will not materially adversely affect the operations of the Operating Company;

3.    The first date on which the Operating Company shall have (i) no operations that would be materially adversely affected by the termination of the trust and reversion of the trust assets to the Grantor, and (ii) no licenses that require approval of any agency having regulatory authority over the Operating Company, which may occur as a result of a Disposition and/or as a result of the transfer or termination of all of such licenses currently held by the Operating Company.

4.    On the first date that the Trustee shall determine that the trust is no longer required by reason of another trust (the "Substitute Trust") being interposed in the ownership structure such that no Restricted Person will become the ultimate beneficial owner of the Companies following termination of the trust; provided, that in the event of a termination of the trust under this Paragraph 4, the Trustee shall not be required to pay the then principal of the trust, or any income then accrued or on hand, to the Grantor, but rather

shall provide that such principal and accrued income shall become the property of the Substitute Trust.

G.    ULTIMATE TERMINATION.    Unless sooner terminated in accordance with the provisions of Subdivision F of this Article, the trust shall terminate upon the first to occur of (i) the Perpetuities Termination Date (as defined in Subdivision K of Article XIII of this Agreement), and (ii) the date that is sixty (60) days after the death of the last living individual Beneficiary provided that on the date of death of the last living individual Beneficiary there is no Qualified Charity that is a Beneficiary and no individual or Qualified Charity is added to the class of Beneficiaries by the Grantor within such sixty (60) day period pursuant to the provisions of Subdivision D of this Article.  Upon such termination, the Trustee shall pay the then principal of the trust, and any income then accrued or on hand, as follows:

1.    If the trust terminates on the Perpetuities Termination Date, such principal and income shall be paid to any among the Beneficiaries, in such shares and proportions and to the exclusion of such one or more of them as the Trustee shall determine; or

2.    If the trust terminates on the date that is sixty (60) days after the death of the last living individual Beneficiary, such principal and income shall be paid to and among such Qualified Charity or Qualified Charities as the Trustee shall select, in such shares and proportions as the Trustee shall determine.

## ARTICLE III

## General Trust Provisions

A. **TRUSTEES EXCLUDED FROM EXERCISE OF DISCRETIONARY POWERS.** Certain discretionary Trustee powers contained in this Agreement are specifically granted only to the Independent Trustee. The provisions of this Subdivision exclude certain Trustees from the exercise of certain discretionary Trustee powers even though the grant of the power may not state that they are so excluded. To the extent that there is a conflict with any other provisions of this Agreement, the provisions of this Subdivision shall control.

1. An individual Trustee of a trust to which property has passed as the result of a transfer or disclaimer made by such Trustee individually shall be excluded from the exercise of discretionary Trustee powers (as described in Paragraph 3 of this Subdivision) with respect to that trust.

2. An individual Trustee who has a beneficial interest in a trust shall be excluded from the exercise of discretionary Trustee powers (as described in Paragraph 3 of this Subdivision) with respect to that trust. An individual Trustee who has a legal obligation to support a person with a beneficial interest in a trust shall be excluded from the exercise of such discretionary Trustee powers with respect to that trust in a manner that to any extent would relieve such Trustee of such support obligation. For purposes of this Agreement, a person has a beneficial interest in a trust if, at the time the discretionary Trustee power is exercised, he or she has a right to income, is a permissible recipient of income or principal, or has a future right to income or principal that would become a present right if all of the then present interests in the trust were then terminating.

9

3.      For purposes of this Subdivision, a discretionary Trustee power is a power the exercise of which affects or determines the beneficial enjoyment of the income or principal of a trust, such as (and specifically including): (i) a power to pay, apply or accumulate income or principal, (ii) a power to determine the allocation of receipts or disbursements between income and principal, and (iii) a power to make a loan to a beneficiary on terms more favorable to the beneficiary than then prevailing market terms.

4.      The discretionary Trustee powers described in Paragraph 3 of this Subdivision shall be exercised as if any excluded Trustee were not in office.

5.      This Subdivision shall not be construed as conferring the powers described in Paragraph 3, but only as establishing rules governing their exercise to the extent they are conferred by other provisions of this Agreement.

6.      The provisions of this Subdivision are not intended to override any provisions of applicable local law limiting the exercise of discretionary Trustee powers by Trustee-beneficiaries that are more restrictive than those set forth in this Subdivision.

B.      <u>OTHER SOURCES OF SUPPORT</u>.  In exercising any discretionary authority to pay or apply income or principal of a trust to or for the benefit of a beneficiary, the Independent Trustee shall be required to inquire into and take into consideration any other source of income or support that the beneficiary (or any other person) may have.

C.      <u>PERMISSIBLE PAYEES</u>.  In making any payment or application of income or principal to or for the benefit of a beneficiary, the Trustee may make payment directly to the beneficiary if it deems the beneficiary to be of reasonable age and competence (even if under the age of twenty-one (21)) or may make application directly to the use of the beneficiary or by payment to a guardian, committee or conservator of the

beneficiary appointed in any jurisdiction. Additionally, if the beneficiary is a minor, the Trustee may make payment to a parent of the beneficiary, to a custodian for the beneficiary under the Uniform Gifts or Transfers to Minors Act of any jurisdiction, or to an adult person with whom the beneficiary resides or who has the care or custody of the beneficiary temporarily or permanently. Evidence of a payment or application or a receipt therefor executed by the beneficiary, guardian, committee, conservator, parent, custodian or adult person shall discharge the Trustee with respect to such payment or application.

D.  <u>RESTRICTIONS ON PAYMENTS AND APPLICATIONS</u>. Notwithstanding any other provision of this Agreement, except as provided in Subdivisions B and F of Article II of this Agreement, the Trustee shall make no payment or application of income or principal by means of a payment to the Grantor or any other Transferor (as defined in Subdivision N of Article XIII of this Agreement), individually or in any fiduciary capacity, nor shall the Trustee make any payment or application of income or principal that would relieve any obligation of the Grantor or any Transferor to support a beneficiary.

E.  <u>POWER TO DIVIDE TRUSTS</u>. The Trustee of any trust hereunder is authorized to divide such trust on a fractional basis into two or more separate trusts for any reason (whether tax or investment related or otherwise) that is not contrary to the primary purpose of the trust, without court approval or the consent of any persons interested in the trust. Assets shall be divided among such separate trusts on the basis of their fair market values at the time of the division. The new trusts so created shall be held on terms and conditions identical to those of the original trust.

F.    <u>POWER TO COMBINE TRUSTS</u>.   The Trustee of any trust hereunder is authorized to combine such trust with any other trust, whether created under this Agreement or any other instrument, having the same terms, the same beneficiaries and the same Trustee (provided that trusts with different inclusion ratios under Chapter 13 of the Code shall not be combined).

<u>ARTICLE IV</u>

<u>Additions</u>

The Trustee of any trust hereunder is authorized to receive property as an addition to such trust, provided that such property is acceptable to the Trustee, and provided further that if the receipt of such property would change the inclusion ratio of the trust under Chapter 13 of the Code, the property shall not be added to the trust but instead shall be held in a separate trust on all of the same terms.

<u>ARTICLE V</u>

<u>Trustee Powers</u>

A.    <u>GENERAL POWERS</u>. In addition, subject to any statement of contrary intent in this Agreement, the Trustee of any trust hereunder shall, without regard to any statutory or judicial restrictions otherwise applying to fiduciaries, have the following powers and discretions in addition to any conferred by law, all of which shall be exercisable without the license or approval of any court:

> (1)    To retain the property described in Schedule "A" and any property added to the trust (including stock of any corporate Trustee acting hereunder, or any affiliate thereof or successor thereto), without liability for any decrease in value and regardless of whether such property is authorized by the laws of the State of Delaware for trust investment or is productive of income and without regard to the proportion that such property or similar property held may bear to the entire trust, or to sell, exchange or otherwise convert the same.

12

(2)     To invest and reinvest the assets of the trust in any securities, stocks, bonds or other property, real or personal, that it may deem advisable, including securities of regulated investment companies and any common trust funds or mutual funds maintained by any corporate Trustee acting hereunder, regardless of whether any such property is authorized by the laws of the State of Delaware for trust investment or is productive of income and without regard to the proportion that any such property or similar property held may bear to the entire trust.

(3)     To hold some or all of the assets of the trust uninvested for such period of time as it deems advisable.

(4)     To sell, at public or private sale, mortgage, lease for any period, alter, improve, or otherwise dispose of any real property or interest in real property at any time forming part of the trust.

(5)     To consent to or oppose or otherwise participate in any mergers, consolidations, reorganizations or other changes affecting any securities at any time held by it and to delegate discretionary powers and pay any assessments or other charges in connection therewith.

(6)     To exercise any options or subscription rights available in connection with any securities and to make any payments required therefor.

(7)     To borrow money from any source (including any Trustee hereunder) for any purpose it may deem suitable or desirable and to pledge any assets of the trust as security for such borrowings.

(8)     To lend assets of the trust to any beneficiary thereof for such purposes and on such terms and conditions (which may be more favorable than then-prevailing market terms) as the Trustee shall deem advisable; to guaranty any loans made to any beneficiary by any third party and to pledge any trust assets as security for any such guaranty.

(9)     To extend the dates of payment on any notes that may be a part of the trust for such period and on such terms and conditions as it may deem advisable.

(10)     To extend or modify the terms of any bond and mortgage; to foreclose any mortgage or take title by deed in lieu of foreclosure or otherwise; to protect or redeem any property from forfeiture for nonpayment of taxes or other liens; and generally to exercise as to such bond and mortgage or such property all powers that an absolute owner might exercise.

(11)     To vote in person or by proxy upon any securities and to delegate its discretionary powers in relation thereto.

(12)    To compromise or otherwise adjust any claims in favor of or against any trust hereunder.

(13)    To hold securities or other property in its own name, individually, in the name of its nominee, or in bearer form, without thereby increasing or decreasing its liability as Trustee.

(14)    To employ agents, accountants, custodians, depositaries and attorneys, to delegate to them discretionary powers, and to compensate them for their services.

(15)    To make division or distribution of the trust, including payment of any pecuniary amount disposition, in cash, in kind using assets valued for that purpose at their distribution date values, or partly in each, and to allocate particular assets other than ratably and with or without regard to Federal income tax cost basis.

(16)    To hold separate parts or shares of the trust wholly or partially in solido for convenience of investment and administration.

(17)    To designate any individual or corporation (including any Trustee hereunder) as Custodian for any minor beneficiary under the Uniform Gifts or Transfers to Minors Act of any jurisdiction (such Custodian to have the power to terminate such custodianship at either age 18 or 21).

(18)    To assume, in the absence of written notice to the contrary, that a fact or an event by reason of which an interest or estate under this Agreement shall commence or terminate does not exist or has not occurred without incurring liability for any action or inaction based upon such assumption.

(19)    To hold or to appoint custodians or depositaries to hold assets of the trust in any jurisdiction either within or without the United States, to transfer assets of the trust to a successor Trustee resident or incorporated in any jurisdiction either within or without the United States.

(20)    To amend the administrative and technical provisions of the trust at such time or times as the Trustee deems appropriate for the proper administration of the trust or to comply with applicable governmental laws or regulations, bearing in mind the purposes for which the trust was established.

(21)    To continue to have all of the foregoing powers and discretions after the termination of the trust, until final distribution.

B.    <u>SELF-DEALING</u>.  Except as otherwise expressly provided:

14

1.      A Trustee shall not be precluded from the exercise of the foregoing powers and discretions with respect to particular property of a trust hereunder solely by reason of the fact that such property consists of (i) stock or other securities of such Trustee (in the case of a corporate Trustee), (ii) stock or other securities of a company of which such Trustee (or, in the case of a corporate Trustee, an officer or director thereof) is an officer or director, or (iii) property in which such Trustee holds an interest in its individual or some other capacity.

2.      Direct dealings between a trust and any Trustee thereof (including, without limitation, purchases, sales, leases, loans, and contracts for services) are authorized, provided the interested Trustee acts in good faith.  The Trustee may employ any law, accounting or financial services firm that is owned by or affiliated with a Trustee, or of which an individual Trustee is a member or employee, to the same extent that such employment would be authorized in the absence of such relationship, and may pay such firm its usual fees for such services notwithstanding that the interested Trustee may share in such fees.

C.      GRANTOR'S APPROVAL REQUIRED FOR DISPOSITION OR AMENDMENT.  Notwithstanding any other provision of this Agreement to the contrary, the Trustee shall have no power to engage in or approve a Disposition or any amendment of the operating agreement of the Holding Company or any of the Operating Companies without the prior written consent of the Grantor.

ARTICLE VI

Investigation of Trustee's Authority

No person or corporation dealing with a Trustee shall be required to investigate such Trustee's authority for entering into any transaction or to see to the application of the proceeds of any transaction.

ARTICLE VII

Provisions Relating to Trustees

A.    TERMINOLOGY.

1.    Except as otherwise indicated, the term "Trustee," and the singular, neuter pronoun used in conjunction therewith, is used herein to refer to the Trustee or Trustees of a trust from time to time acting, regardless of their number or of the gender of any individual Trustee.

2.    A Trustee of a trust who (i) does not have a beneficial interest (as defined in Subdivision A of Article III of this Agreement) in such trust, and (ii) is not a Transferor with respect to the trust, is an "Independent Trustee" of such trust.  The term "Independent Trustee," and the singular neuter pronoun used in conjunction therewith, is used herein to refer to the Independent Trustee or Independent Trustees of a particular trust acting at a given time, regardless of the actual number or gender of such Independent Trustee or Independent Trustees.  A discretionary power granted hereunder to the Independent Trustee shall be exercised as if no other Trustee were in office.

B.    BINDING EFFECT OF DECISIONS.    Except as otherwise indicated and subject to the last paragraph of Subdivision A of Article V of this Agreement, a power or discretion to be exercised or determination to be made by the Trustee of any

16

trust hereunder shall be exercised or made in the sole and absolute discretion of such Trustee and such exercise or determination shall be binding and conclusive upon all interested persons.

      C.    <u>MAJORITY CONTROL—MINISTERIAL ACTS</u>.   Except as otherwise indicated, if the number of Trustees authorized to exercise a power or discretion shall be two (2), such power or discretion shall be exercised by such Trustees unanimously, and if the number of Trustees authorized to exercise a power or discretion shall be greater than two (2), such power or discretion shall be exercised by a majority of such Trustees. Notwithstanding the foregoing, provided that any decision with respect to the exercise of any such power or discretion has been agreed to by a majority of the Trustees authorized to exercise it, any one of them shall have the power to perform, on behalf of the trust, any ministerial acts that are necessary or appropriate to carry out such decision, such as (and specifically including): (i) the power to execute any deed or other instrument of conveyance, (ii) the power to sign checks withdrawing or disbursing funds, (iii) the power to endorse for transfer or deposit any check or draft, and (iv) the power to direct and execute brokerage transactions relating to commodities, securities and other investment assets. Any such ministerial act performed by one Trustee shall be binding upon the trust and no person or corporation dealing with any one Trustee shall be required to investigate whether or not the action being taken by such Trustee on behalf of the trust was authorized by a majority of the Trustees authorized to take such action.

      D.    <u>RESOLUTION OF DISPUTES</u>.  In any case in which there are two acting Trustees of a trust hereunder, one of whom is an individual and the other a corporation, and there is a disagreement between them, the decision of the individual

Trustee shall control except on matters as to which the individual Trustee is precluded from acting by this Agreement or by law.

      E.    <u>DELEGATION OF POWERS</u>.  Any Trustee may delegate some or all of its authority hereunder, including, without limitation, its custodial responsibility of all or any portion of the trust's assets, (i) to any other Trustee who is not restricted by law or the provision of this Agreement from exercising such authority, or (i) to a third party, as the Trustee determines in accordance with and subject to the restrictions and liabilities set forth in 12 Del. C. §3322, by a written instrument executed by the Trustee and delivered to the other Trustee or third party to whom such authority has been delegated, and such other Trustee or third party may, acting alone, exercise the authority of the Trustee as so delegated.  The Trustee may also revoke any such delegation at any time written instrument executed by the Trustee and delivered to the other Trustee or third party whose delegation is being revoked.

      F.    <u>RELEASE OF POWERS</u>.  Any Trustee, at any time, for any reason, and with or without explanation, may release upon any terms, either wholly or in part, temporarily or permanently, revocably or irrevocably, and with or without binding successors, any one or more of the powers and discretions conferred upon the Trustee by this Agreement or generally pursuant to law.  If the release of a power or discretion is made by less than all of the Trustees upon whom it is conferred, such power or discretion shall continue to be exercisable in full by the Trustees who have not released it.

      G.    <u>ADDITIONAL AND SUCCESSOR TRUSTEES</u>.  1.  The individual Trustee of any trust hereunder is authorized to appoint additional and successor Trustees of such trust.  In addition, any corporate Trustee who is acting alone is authorized

18

to appoint an individual co-Trustee or a successor Trustee. Any such additional or successor Trustee may be resident or incorporated anywhere in the world. However, only one corporate Trustee may serve as a Trustee of a particular trust at a given time, and, notwithstanding any other provisions of this Agreement, in no event shall any of the following be eligible to serve as a Trustee of any trust hereunder: (a) GREG EVAN LINDBERG, (b) any spouse or issue of Greg Evan Lindberg, (c) any Excluded Person, (d) any spouse or issue of any Excluded Person, or (e) any person who is related or subordinate to any person described in clause (a), (b), (c) or (d) above.

2.      It is the Grantor's intent that there shall always be at least one Trustee acting hereunder. As a condition to becoming a Trustee, any successor Trustee must become a party to this Agreement by executing documentation reasonably satisfactory to the Companies (such documentation, a "Successor Trustee Joinder") (each successor Trustee appointed pursuant to the terms of this Subdivision G is referred to as a "Successor Trustee"). If there is a vacancy in the office of Trustee of any trust hereunder that is not filled by an appointment authorized by Paragraph 1 of this Subdivision, the Grantor appoints to fill such vacancy such bank, trust company or individual as shall be designated by the Grantor, or if the Grantor fails to make an appointment within sixty (60) days of the creation of the vacancy, by the first individual listed below who is living and not incapacitated: (i) Justin Holbrook, (ii) Marc Greenspan, and (iii) George A. Vandeman.

3.      The appointment of a Trustee pursuant to Paragraph 1 or 2 of this Subdivision shall be made by a written instrument signed by the appointor or appointors and delivered to the appointee, shall take effect as provided therein and shall be revocable

19

until it shall take effect; provided, however, that no such appointment shall be effective until a written instrument of acceptance of trusteeship has been signed by the Trustee so appointed.

        H.    RESIGNATION.  Any Trustee may resign by a written instrument delivered to the Grantor and to any other Trustee acting hereunder (or, if the resigning Trustee is acting alone, to its successor); provided, that if the resigning Trustee is acting alone, the resignation shall not be effective until the resigning Trustee's successor has been effectively appointed.  Notwithstanding the foregoing, a Trustee may resign if the Grantor fails to timely pay any compensation payable to such Trustee for serving as Trustee hereunder (as such compensation may be agreed upon between such Trustee and the Grantor by separate agreement) and such failure is not cured within 10 days of the Grantor's receipt of written notice of such payment default, and such Trustee's resignation shall be effective at the end of such 10-day period.

        I.    POWER TO REMOVE CORPORATE TRUSTEE.  1.  The individual Trustee of any trust hereunder shall have (i) the right to remove any corporate Trustee of any trust hereunder, with or without cause, and (ii) the right (but, subject to the provisions of Paragraph 5 of this Subdivision, not the obligation) to appoint a successor Trustee to replace the corporate Trustee so removed.

        2.    The removal of a Trustee pursuant to this Subdivision shall be made by a written instrument signed by the remover or removers and delivered to the Trustee to be removed.

        3.    The appointment of a successor Trustee pursuant to this Subdivision shall be made by a written instrument signed by the appointor or appointors and delivered

to the appointee, shall take effect as provided therein and shall be revocable until it shall take effect; provided, however, that no such appointment shall be effective until a written instrument of acceptance of trusteeship has been signed by the Trustee so appointed.

4.    An appointment made pursuant to this Subdivision of a Trustee to succeed a Trustee removed pursuant to this Subdivision shall take precedence over an appointment to fill the same vacancy made pursuant to Subdivision G of this Article. Any successor Trustee so appointed may be resident or incorporated anywhere in the world. However, only one corporate Trustee may serve as a Trustee of a particular trust at a given time, and, notwithstanding any other provisions of this Agreement, in no event shall any of the following be eligible to serve as a Trustee of any trust hereunder: (a) GREG EVAN LINDBERG, (b) any spouse or issue of Greg Evan Lindberg, (c) any Excluded Person, (d) any spouse or issue of any Excluded Person, or (e) any person who is related or subordinate to any person described in clause (a), (b), (c) or (d) above.

5.    Notwithstanding any other provisions of this Subdivision, if in the case of the removal of an Independent Trustee of any trust hereunder pursuant to Paragraph 1 of this Subdivision, any person authorized to participate in such removal (i) is a Transferor with respect to the trust, or (ii) has a present or future beneficial interest in the trust or a legal obligation to support a person with such an interest, the removal shall not be effective until a successor corporate or individual Independent Trustee is effectively appointed to replace the Independent Trustee so removed, and the successor to the Independent Trustee so removed may not be related or subordinate to any individual authorized to participate in such appointment.

J.  COMPENSATION.  1.  For serving as Trustee hereunder, Hugh Steven Wilson shall be entitled to such reasonable compensation, which may be in excess of the compensation otherwise allowed by Delaware statutory law, as may be agreed upon between Hugh Steven Wilson and the Grantor.

2.  Any other Trustee acting hereunder pursuant to an appointment authorized or directed to be made pursuant to this Article shall be entitled to such reasonable compensation, which may be in excess of the compensation otherwise allowed by Delaware statutory law, as may be agreed upon between appointor and appointee, or, in the absence of any such agreement, to such compensation as may be allowed by the laws of the State of Delaware in effect from time to time.

3.  The Trustee shall pay out of the income or principal or both, as it shall determine, the charges and expenses that each Trustee incurs in the administration of the trust.

4.  Each Trustee may from time to time prior to the settlement of its accounts, and without court approval, make such payments to itself, individually, on account of its compensation as it determines to be just and reasonable.  It shall not be chargeable for interest by reason of any such payment and shall not be required to file a bond to secure repayment.

5.  A Trustee who ceases to act for any reason shall be entitled to any compensation already paid as well as to any compensation then earned but unpaid. Notwithstanding the foregoing, no Trustee serving hereunder shall be entitled to receive a termination fee in the event such Trustee is removed, resigns or otherwise ceases to serve prior to the termination of the trust.

K. <u>EFFECT OF MERGER ON SUCCESSION OF TRUSTEES</u>. Any corporation or association (i) into which the Trustee may be merged or with which it may be consolidated, (ii) resulting from any merger, consolidation or reorganization to which the Trustee may be a party, or (iii) to which all or any part of the Trustee's fiduciary business, which includes the collective investment funds, for which the Trustee is the Trustee, may be transferred, will have all rights, powers and obligations of the Trustee under this Agreement, without the necessity of executing any instrument or performing any further act.

L. <u>NO LIABILITY FOR ACTS OF PREDECESSOR TRUSTEES</u>. Notwithstanding any otherwise applicable law or in equity, no successor Trustee shall be required to examine the acts of any prior Trustee, and any successor Trustee shall be responsible only for those assets which are actually delivered to such Trustee.

M. <u>TRUSTEE TO SERVE WITHOUT BOND</u>. No bond, surety or other security shall be required of any Trustee, any law of any state or jurisdiction to the contrary notwithstanding.

N. <u>INVESTMENT MANAGERS</u>. The Trustee is authorized to employ one or more investment managers for any trust hereunder. The Trustee may delegate discretionary investment and management functions to any such investment manager and shall have no liability for any investment loss caused by any act, neglect, omission or misconduct of the investment manager, provided that the Trustee exercised reasonable care, skill and caution in selecting and monitoring the performance of the investment manager. The investment manager may be compensated from the trust in such amounts as the Trustee shall determine without reducing the compensation of any Trustee.

O.     <u>ADMINISTRATIVE AGENT</u>.  The Trustee of any trust with no corporate Trustee may employ an administrative agent for such trust.  Services that such an agent may be employed to perform shall include the collection and custody of assets; the evaluation of assets and claims; the payment of claims and expenses; the management and administration of assets; the preparation of tax returns and the settlement of tax liabilities; record keeping and account preparation; and, in general, the discharge of any and all ministerial functions involved in the administration of a trust.  The Trustee may also delegate discretionary powers to the agent for the efficient administration of the trust.  The agent may be compensated from the trust in such amounts as the Trustee shall determine without reducing the compensation of any Trustee.

P.     <u>INDEMNIFICATION</u>. Each Trustee shall be entitled to be indemnified, defended, and held harmless by the trust from the trust assets (and thereafter, if the trust assets cannot adequately indemnify the Trustees, will be indemnified by the Grantor) against any loss, liability, or expense (including, without limitation, reasonable costs and expenses of litigation, and of investigation, damages, judgments, and amounts paid in settlement, and including reasonable out of pocket legal fees and expenses in connection with enforcement of such Trustee's rights hereunder) arising out of, or incurred in connection with, the exercise and performance of any of the powers and duties of such Trustee; <u>provided</u> that no Trustee shall be entitled to indemnification pursuant to this Subdivision P of Article VII of this Agreement for any loss, liability, or expense incurred by reason of willful misconduct, negligence, or breach of fiduciary duty in the performance of such Trustee's obligations and duties hereunder (the "Indemnified Acts"). The provisions of this Subdivision P of Article VII of this Agreement shall survive any

resignation or removal of any Trustee and appointment of a successor trustee. A Trustee shall be advanced any amounts incurred by such Trustee in defending an action brought or threatened in respect of Indemnified Acts, which shall be paid out of the trust assets (or by the Grantor if the trust assets cannot adequately cover such amounts) in advance of final disposition upon delivery to the Grantor of a legal opinion of trust counsel that indemnification is likely to be warranted and such Trustee's written agreement to refund such amounts if it is ultimately determined that indemnification is not warranted.

## ARTICLE VIII

## Effect of Incapacity

A.    If individual Trustee becomes incapacitated (as defined in Subdivision G of Article XIII of this Agreement), he or she shall be deemed to have resigned from his or her position.

B.    No Trustee shall be under a duty to institute an inquiry into the possible incapacity of any other Trustee but the expense of an inquiry reasonably instituted may be paid from trust assets.

C.    Each Trustee accepting office under this Agreement does, by so accepting, waive all provisions of law relating to disclosure of confidential medical information insofar as that disclosure would be pertinent to any inquiry under this Article.

## ARTICLE IX

## Spendthrift Provisions

No disposition of, or charge or encumbrance on, the income or principal of any trust hereunder or any part thereof by any beneficiary under this Agreement by way of anticipation shall be valid or in any way binding upon the Trustee, and no beneficiary shall

have the right to assign, transfer, encumber or otherwise dispose of such income or principal or any part thereof until the same shall be paid or distributed to such beneficiary by the Trustee, and no income or principal or any part thereof shall be in any way liable to any claim of any creditor of any such beneficiary. Notwithstanding the foregoing, during any period that the membership interests in the Companies are held in trust hereunder, the assets of the trust shall be subject to the claims of the creditors of the Companies and may be used to pay the debts of the Companies.

ARTICLE X

Governing Law

This Agreement shall be construed under, and all matters pertaining to the validity and construction of this Agreement and the trusts created thereunder shall be governed by, Delaware law except as such governing law may be changed by the Trustee as authorized elsewhere in this Agreement. The administration of the trusts created by the trust instrument shall be governed by Delaware law, except as such governing law may be changed by the Trustee as authorized elsewhere in this Agreement.

ARTICLE XI

Situs

A.    The situs of the trusts created hereunder shall be Delaware.

B.    The Trustee shall have the power to remove all or part of the trust property or to change the situs of administration of the trust from one jurisdiction to another (including outside the United States) and to elect, by a written instrument filed with the trust records, that the law of such other jurisdiction shall thereafter govern the

26

administration of the trust, provided that the Trustee shall not make such an election if it would alter any beneficial interest under the trust.

## ARTICLE XII

### Accountings and Virtual Representation

No Trustee shall be required to file an account of its proceedings in any court at any time.  A Trustee may, at the expense of the trust, render an accounting upon termination of a trust hereunder or at any other time it may deem an accounting necessary or advisable.  In any proceeding for the judicial settlement of an account, and in any other judicial proceeding pertaining to any trust hereunder, if a party to the proceeding has the same interest as a person under a disability, it shall not be necessary to serve process upon the person under a disability.  In any non-judicial settlement of an account, an instrument settling the account executed by all of the persons upon whom service of process would be required in a proceeding to settle said account judicially shall be binding and conclusive on all persons upon whom service of process would not be required in such proceeding as well as upon all of the persons who executed said instrument.  A beneficiary's right to settle a Trustee's account shall not include the power or right to enlarge or shift the beneficial interest of any beneficiary of any trust hereunder.

## ARTICLE XIII

### Definitions

A.    ADVERSE PROCEEDING.  The term "Adverse Proceeding" shall mean the case titled United States v. Lindberg, 2020 U.S. Dist. LEXIS 39886, 2020 WL 1164691 (W.D.N.C. March 6, 2020).

27

B.    <u>CODE</u>.  The term "Code" (and references to particular Chapters or Sections of the Code) shall mean the Internal Revenue Code of 1986 (or particular Chapters or Sections thereof), as amended from time to time and as interpreted by Treasury Department regulations and rulings and Federal court decisions.

C.    <u>COMPANIES</u>.  The term "Companies" shall mean, collectively, (i) each Operating Company and (ii) the Holding Company, and the term "Company" shall mean any one of them.

D.    <u>DISPOSITION</u>.  The term "Disposition" means a sale, directly or indirectly, of all or a material portion of the membership interests in or assets of the Holding Company and/or the Operating Companies.

E.    <u>EXCLUDED PERSON</u>.  The term "Excluded Person" shall have the meaning ascribed to that term in Section 1320a-7 of Title 42 of the United States Code, and shall include any person that the Centers for Medicare and Medicaid Services has determined to be an Excluded Person pursuant to its regulatory authority thereunder.

F.    <u>HOLDING COMPANY</u>.  The term "Holding Company" shall mean Eye Care Leaders Portfolio Holdings, LLC, a North Carolina limited liability company.

G.    <u>INCAPACITATED</u>.  An individual shall be deemed to be incapacitated if any Trustee or beneficiary comes into possession of any of the following: (i) a court order holding the individual to be legally incapacitated to act in his or her own behalf, or appointing a guardian to act in his or her behalf; (ii) certificates of two licensed physicians certifying that the individual is unable, for any reason, to act rationally and prudently in his or her own financial best interests; or (iii) evidence deemed by the recipient to be both credible and currently applicable that the individual has disappeared, is

unaccountably absent, or is being detained under duress in such manner as to be unable effectively and prudently to attend to his or her own financial best interests. The incapacity shall be deemed to continue until the court order, certificates or circumstances have been revoked or become inapplicable.

H.     <u>ISSUE AND RELATED TERMS</u>. The term "issue," when used with respect to any person, shall mean that person's descendants of any degree, and the terms "child," "children," "descendant" and "issue," and other words of similar import, shall include persons who have been legally adopted and persons taking through such legally adopted persons.

I.     <u>MINOR</u>. The term "minor" shall mean any person under the age of twenty-one (21).

J.     <u>OPERATING COMPANY</u>. The term "Operating Company" shall mean any entity more than fifty percent (50%) of the equity of which is owned, directly or indirectly, by the Holding Company.

K.     <u>PERPETUITIES TERMINATION DATE</u>. The trusts hereunder are governed by Delaware law and can therefore last in perpetuity. However, if the governing law is ever changed to, or the trusts hereunder are otherwise deemed to be subject to, the law of a jurisdiction that has a "rule against perpetuities" or similar rule which limits the period during which property may be held in trust to a period shorter than the period allowed under Delaware law, then the "Perpetuities Termination Date" shall be the last day of the longest period that property may be held in trust under this Declaration under the applicable law (including any applicable period in gross, such as 21 years, 90 years, or 110 years); provided, however, that if the jurisdiction has a rule against perpetuities or similar

rule which applies only to certain types of property, such as real property, then the provisions of this Subdivision otherwise requiring the trust to terminate at the end of such shorter period shall only require such property to be distributed at the end of such shorter period. Finally, if under the law of such jurisdiction, the longest period that property may be held in trust may be determined (or alternatively determined) with reference to the death of last survivor of a group of individuals in being upon the commencement of such rule against perpetuities (or similar rule), then the members of such group of individuals shall be the issue of his late Britannic Majesty King George V whose dates of birth were prior to the date of commencement of such rule against perpetuities (or similar rule).

L.    <u>QUALIFIED CHARITY</u>.    An organization shall be a Qualified Charity if, at the time when any principal or income of any trust hereunder is to be distributed to it, it is an organization described in Sections 170(c) and 2055(a) of the Code.

M.    <u>RELATED OR SUBORDINATE PARTY</u>.    For purposes of this Agreement, a person or entity (the first party) shall be considered related or subordinate to another person or entity (the second party) if the first party occupies a relationship to the second party that would be described in Section 672(c)(1) or (2) of the Code if the second party were the grantor of the trust.

N.    <u>TRANSFEROR</u>.  The term "Transferor" when used generally, shall mean any person who has gratuitously transferred or been deemed to have gratuitously transferred property to any trust hereunder, including the Grantor, and when used in connection with a specific transfer of property to any trust hereunder, shall mean the person who made or is deemed to have made such transfer.

30

## ARTICLE XIV

### Binding Effect; Benefit

This Agreement shall be binding upon the executors, administrators, successors and assigns of the parties hereto and shall be effective upon the signature of the Grantor and the Trustee.

## ARTICLE XV

### Captions

The captions used at the beginning of Articles and sections of Articles are for convenience only and shall not be deemed to have independent significance.

## ARTICLE XVI

### Counterparts

This Agreement may be executed in two or more counterparts, each of which shall be deemed an original, and it shall not be necessary in making proof of this Agreement to produce or account for more than one such counterpart.

[The remainder of this page has been intentionally left blank.
Article XVII begins on page 32.]

31

ARTICLE XVII

Agreement Irrevocable; Trustee's Limited Power to Amend

This Agreement and the trusts hereby created shall be irrevocable and not subject to modification by the Grantor or by the Trustee, except as provided in the following sentence. During any period in which the membership interests in the Holding Company are held in trust hereunder, this Agreement, and the trusts hereby created, may be amended by the Trustee if and to the extent required by any agency having regulatory authority over the Holding Company or by any court having jurisdiction over the Holding Company.

ARTICLE XVIII

Litigation

Each of the Grantor and the Trustee (a) acknowledges that the Grantor is subject to the matter of Southland National Insurance Corporation, et al. v. Greg Lindberg, et al., Case No. 19 cv 013093 (the "Litigation"), presided over by Wake County Superior Court (the "Court"), (b) affirms that the trust assets remain subject to the Litigation, (c) submits to the jurisdiction of the Court, and (d) agrees to amend this Agreement as necessary to conform to any order of the Court issued in connection with the Litigation.

DocuSign Envelope ID: 6966FE77-5689-46EF-94F4-0C471945458A

IN WITNESS WHEREOF, the Grantor and the Trustee have executed this Agreement as of the date first above written.

**GRANTOR:**                                      **TRUSTEE:**

**GHTG INVESTMENT, LLC,**
a North Carolina limited liability company

*Greg Lindberg*
D94F2DEFCB50443...

By:_____          By: _____
     Name: Greg E. Lindberg                      HUGH STEVEN WILSON
     Title: Manager

*[ECL Trust Agreement]*

IN WITNESS WHEREOF, the Grantor and the Trustee have executed this Agreement as of the date first above written.

**GRANTOR:**                                    **TRUSTEE:**

**GHTG INVESTMENT, LLC,**
a North Carolina limited liability company

By: _____                       By: _____
    Name: Greg E. Lindberg                           HUGH STEVEN WILSON
    Title: Manager

*[ECL Trust Agreement]*

SCHEDULE A

Twenty Dollars ($20)

**PROMISSORY NOTE**

**$445,000,000.00**                                                **July 22, 2021**

        1.     FOR VALUE RECEIVED, THE ECL TRUST, having a business address of c/o Hugh Steven Wilson, Trustee, 575 Circle Drive, Denver, Colorado 80206 (the "Borrower"), hereby unconditionally promises to pay to the order of GHTG INVESTMENT, LLC, having a business address of 2222 Sedwick Road, Durham, North Carolina 27713 (the "Payee") the principal sum of FOUR HUNDRED FORTY-FIVE MILLION DOLLARS ($445,000,000.00) (the "Initial Principal Amount" (as (i) adjusted in accordance with Section 2 hereof, and (ii) augmented in accordance with Section 3 hereof by any accrued but unpaid interest, the "Principal Amount"), on the Maturity Date (as hereinafter defined), and to pay interest on the Principal Amount as follows.

        2.     The Borrower and the Payee have entered into an agreement of even date herewith (the "Transfer and Consent Agreement") providing for the transfer by the Payee to the Borrower of One Hundred Percent (100%) of the membership interests in EYE CARE LEADERS PORTFOLIO HOLDINGS, LLC (the "Company", and said One Hundred Percent (100%) of the membership interests in the Company, the "Transferred Interests"). The Company is governed by an Operating Agreement dated as of December 31, 2018. All capitalized terms used but not defined herein shall have the meanings ascribed to them in the Transfer and Consent Agreement. As provided in the Transfer and Consent Agreement, this Promissory Note is being given by the Borrower to the Payee as consideration for the Transferred Interests.

        3.     The Borrower hereby unconditionally promises to pay to the order of the Payee interest, compounded quarterly, on the unpaid Principal Amount of this Promissory Note, for the period from and including the date hereof to, but excluding, the Maturity Date, at a rate per annum equal to twenty-five percent (25.00%), which shall be payable hereunder in arrears on the first business day of each fiscal quarter (i.e., on the first business day of each of January, April, July and October) and any such payment amount shall be compounded and added to the Principal Amount on the date that such interest is accrued (the "PIK Interest"). All interest accrued hereunder but unpaid as of the day preceding the Maturity Date shall be payable in cash on the Maturity Date.

        4.     The outstanding balance of the Principal Amount shall be payable in full in cash on the earlier to occur of: (i) the date of the sale of all, or a material portion of, the Transferred Interests and/or the assets of the Company (a "Disposition"), which Disposition shall require the prior written consent of the Payee, or (ii) the day preceding the ninth (9th) anniversary of the date hereof (the earlier of said dates, the "Maturity Date"). Notwithstanding any other provisions hereof, and provided that no Disposition has occurred, a payment to the Payee by the Borrower of the Transferred Interests shall constitute payment to the Payee of the Principal Amount and all accrued but unpaid interest in full, even if the value of the Transferred Interests shall have decreased below the outstanding balance of the Principal Amount (plus all accrued but unpaid interest) at the time of such payment.

        5.     The Borrower may, with the prior written consent of the Payee, prepay all or any portion of this Promissory Note at any time without premium or penalty of any kind. All

payments made by the Borrower shall be applied: (i) first, to the payment of any accrued but uncompounded PIK Interest, and (ii) second, the remainder to the payment of the outstanding balance of the Principal Amount.

6.    If one or more of the following events shall occur and be continuing (each an "Event of Default"):

(a)    The Borrower shall default in the payment of any principal of or interest on this Promissory Note when due and any such default shall have continued unremedied for thirty (30) or more days after notice thereof by the Payee to the Borrower; or

(b)    Any material provision of this Promissory Note shall for any reason cease to be valid, binding and enforceable in accordance with its terms.

THEREUPON: if not already fully due and payable at the Maturity Date, the Payee may, by notice to the Borrower, declare the Principal Amount then outstanding of, and the accrued interest on, this Promissory Note to be accelerated, whereupon such amounts shall be immediately due and payable without presentment, demand, protest or other formalities of any kind, all of which are hereby expressly waived by the Borrower.

7.    Notices to the Payee hereunder shall be sent by certified mail or delivered by a recognized commercial courier service to the Payee at 2222 Sedwick Road, Durham, North Carolina 27713.  Notices to the Borrower hereunder shall be sent by certified mail or delivered by a recognized commercial courier service to the Borrower at c/o Hugh Steven Wilson, Trustee, 575 Circle Drive, Denver, Colorado 80206, or such other address as the Borrower shall notify the Payee.  Unless expressly provided otherwise, notices shall be deemed effective upon the earlier of receipt thereof or the second (2nd) business day after such notice shall have been sent in accordance with this Section 7.

8.    The terms of this Promissory Note may be waived, altered or amended only by an instrument in writing duly executed by the Payee and the Borrower.  Absent an express written waiver, no failure to exercise nor any delay in exercising any right, power or privilege hereunder shall operate as a waiver thereof.

9.    This Promissory Note shall be binding upon the Borrower and its successors and permitted assigns.  The Borrower may not assign this Promissory Note unless the Payee shall have obtained the Payee's prior written consent.

10.    If any term or provision of this Promissory Note or the application thereof to any person or circumstance shall be invalid, illegal or unenforceable in any respect, the remainder of this Promissory Note shall be construed without such provision, and the application of such term or provision to persons or circumstances other than those as to which it is held invalid, illegal or unenforceable, as the case may be, shall not be affected thereby, and all other terms and provisions of this Promissory Note shall be valid and enforceable to the fullest extent permitted by law or equity.

11.    This Promissory Note and the rights and obligations of the parties hereunder shall in all respects be governed by, and construed and enforced in accordance with, the laws of

2

the State of New York (without giving effect to New York's principles of conflicts of law). The Borrower hereby unconditionally and irrevocably submits to the non-exclusive jurisdiction of any New York State or Federal court sitting in the City of New York over any suit, action or proceeding arising out of or relating to this Promissory Note, and the Borrower hereby unconditionally agrees and consents that, in addition to any methods of service of process provided for under applicable law, all service of process in any such suit, action or proceeding in any New York State or Federal court sitting in the City of New York may be made by certified or registered mail, return receipt requested, directed to the Borrower at the address indicated hereinabove and service so made shall be complete five (5) days after the same shall have been so mailed.

IN WITNESS WHEREOF, the Borrower has caused this Promissory Note to be duly executed and delivered as of the day and year first above written.

**BORROWER:**

**THE ECL TRUST**

By: Hugh Steven Wilson, Trustee

**ACKNOWLEDGED AND AGREED:**

**GHTG INVESTMENT, LLC,**
a North Carolina limited liability Company

By: _____
    Name: Greg E. Lindberg
    Title: Manager

*[ECL Promissory Note]*

DocuSign Envelope ID: 6966FE77-5689-46EF-94F4-0C471945458A

IN WITNESS WHEREOF, the Borrower has caused this Promissory Note to be duly executed and delivered as of the day and year first above written.

**BORROWER:**

**THE ECL TRUST**

_____

By: Hugh Steven Wilson, Trustee

**ACKNOWLEDGED AND AGREED:**

**GHTG INVESTMENT, LLC**,
a North Carolina limited liability Company

Greg Lindberg
D94F2DEFCB50443...

By: _____

Name: Greg E. Lindberg
Title: Manager

*[ECL Promissory Note]*